**REMITTITUR SUGGESTED in Part, MODIFIED in Part, AFFIRMED in Part, REVERSED in Part, and REMANDED and Opinion Filed August 7, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-01607-CV

**BRUCE B. MCLEOD III, Appellant**

**V.**

**ALFRED GYR, Appellee**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-02708-B**

## OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lang-Miers

We withdraw our opinion dated May 5, 2014, and vacate the judgment of that date. We deny appellant's motion for rehearing. This is now the opinion of the Court. This is an appeal from a post-answer default judgment rendered against attorney Bruce B. McLeod III on Alfred Gyr's claims for deceptive trade practices and breach of fiduciary duty. McLeod raises four issues on appeal challenging the sufficiency of the evidence to support the judgment, the trial court's order denying his motion for new trial, and the trial court's order reinstating the case after having dismissed it. We modify the trial court's judgment in part, suggest a remittitur in part, affirm in part, reverse in part, and remand.

## I. BACKGROUND

McLeod is a lawyer "licensed by the DC Court of Appeals" and admitted to practice law in the United States district courts for the northern and eastern districts of Texas. He lives in Texas. Gyr was born in Switzerland and lives in Texas where he works with his son and girlfriend. Gyr met McLeod in 2009 and retained him that fall to handle some debt collection matters. In December 2009 Gyr told McLeod that he wanted to become a naturalized United States citizen; Gyr said his father's 90th birthday was in June 2010, and he wanted to travel to see his father and celebrate his father's birthday with him. McLeod told Gyr he "specialized in immigration matters . . . and handled immigration matters . . . including the [N-400] application to become naturalized United States citizens." Gyr said he "believed [McLeod] to be an expert based upon his representations to represent people in immigration matters, in particular becoming naturalized United States citizens" and retained McLeod to file the N-400 application on his behalf. Gyr signed a contract with McLeod in December 2009 to handle the N-400 application matter. The contract required Gyr to pay McLeod a $3,000 nonrefundable retainer, $200 per hour for services rendered, and $250 per hour for "out-of-office appearances" such as agency or court hearings. Gyr also signed a blank N-400 application.

McLeod completed the N-400 application and submitted it in March or April 2010. It was rejected. McLeod submitted the application three more times, and each time it was rejected.[1] Each time the application was rejected, Gyr received a letter notice of rejection from the government. The date of the last rejection notice was August 27, 2010. Each time Gyr received a rejection notice, he asked McLeod for an explanation. Gyr said he could not

---

[1] In at least one of the submissions, McLeod checked "No" to the following questions: "Do you support the Constitution and form of government of the United States?"; "Are you willing to take the full Oath of Allegiance to the United States?"; and "If the law requires it, are you willing to bear arms on behalf of the United States?" The application also contained the wrong date of birth for Gyr and left out a digit in Gyr's alien number. Gyr testified that he signed a blank application, including the portion that stated in bold, "NOTE: Do not complete Parts 13 and 14 until a USCIS Officer instructs you to do so."

remember everything McLeod told him about why the applications were rejected. "He told me so many excuses." Sometimes McLeod said "[t]hey're stupid people over there," but it was "always somebody else's fault." Gyr said McLeod told him "he's specialist" and Gyr "believed him, you know." Gyr paid McLeod $23,000 for his services in connection with the N-400 application matter.

During this same time period, Gyr testified that he paid McLeod an additional $1,200 to investigate the title to a condominium. Gyr said McLeod did nothing and the realtor handled the title investigation. Then Gyr learned that McLeod had "lied to" him about a Social Security matter McLeod was supposed to be handling, and Gyr said "that's it." He went to McLeod's office and asked for "all [his] papers." McLeod handed him a bill for services rendered on the N-400 application matter in the amount of $19,660; the bill did not give Gyr credit for all of the cash payments he made. Gyr retained his current lawyer, Rick Frazier, to file the N-400 application for him; he paid Frazier $2,000 plus expenses and became a naturalized United States citizen within three months of filing the application.

Gyr sued McLeod for legal malpractice, breach of fiduciary duty, fraud, deceptive trade practices, negligent misrepresentation, and breach of contract. The parties were ordered to mediation and they settled the dispute. They signed a settlement agreement requiring McLeod to pay Gyr $24,500 over a period of time. The settlement agreement also required McLeod to sign an agreed judgment for $24,500 to secure payment of the settlement sum. In the settlement agreement Gyr agreed not to execute or abstract the judgment unless McLeod defaulted on the payments.

The mediator informed the trial court that the case had settled and that a proposed judgment would be forthcoming. The trial court sent a notice to the parties that the case was set

for "final disposition" and, unless a final judgment was furnished to the court prior to that date, the case would be dismissed.

Frazier prepared a proposed agreed judgment and sent it by email to McLeod's lawyer, Wesley Newell. Newell did not respond. Frazier made additional attempts by email to get a response from Newell, but when those attempts failed, Frazier asked the mediator to intervene. The mediator emailed Newell about the proposed agreed judgment, but Newell did not respond to him either. Meanwhile, the date set by the trial court for final disposition of the case came and went without an agreed judgment being filed and the court dismissed the case.

Gyr filed a sworn motion to reinstate the case alleging that the failure to submit a proposed judgment was due to the failure and refusal of Newell to cooperate with him in getting the agreed judgment signed. Gyr also filed a motion to compel and a request for sanctions asking the court to order McLeod's compliance with the settlement agreement. The trial court reinstated the case. The court set the case for a bench trial and sent notice of the trial setting to the parties. Gyr and his lawyer appeared for trial; McLeod and his lawyer did not. After hearing evidence, the trial court rendered a final judgment in favor of Gyr on his claims under the DTPA and for breach of fiduciary duty, awarded Gyr total actual damages of $24,950, additional damages of $47,500 for a knowing violation of the DTPA, attorney's fees of $28,210 for trial of his DTPA claim, conditional attorney's fees of $12,500 for appeals, and prejudgment interest. The court filed findings of fact and conclusions of law showing that Gyr's total actual damages of $24,950 included $23,750 in actual damages under the DTPA and $1,200 in actual damages for breach of fiduciary duty.

McLeod filed a sworn motion for new trial. He asked the trial court to vacate the judgment and enforce the mediated settlement agreement "based on the principles of '*res judicata*' and collateral estoppel." He also argued that the trial court's findings were "against the

–4–

great weigh[t] and preponderance of the evidence and are manifestly unjust." At the hearing on the motion, McLeod argued that the settlement agreement triggered "the doctrines of collateral estoppel as well as res judicata." And he argued that if Gyr was not happy with the settlement agreement, he should have moved to set it aside instead of trying "to circumvent the intent and agreement . . . ." As to why McLeod's lawyer did not respond to Frazier's emails about the proposed agreed judgment, Newell said, "Again, this – the gravamen of this dispute, if you will, comes back again to the fact that I told Mr. Frazier emphatically that in order to ensure notice to me, he needs to call me or fax me [not email me]." The court asked Newell why he and McLeod did not appear for trial, and Newell said his "understanding was that if the compromised settlement agreement had been entered there would be no reason for the trial. So I thought it was an erroneous sending of the trial notice." The trial court asked, "So . . . you had notice of the setting, you just thought it was erroneous?" Newell said yes. The trial court denied the motion for new trial and this appeal followed.

## II. THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court made 35 findings of fact; the following are relevant to this appeal:

3.  In the fall of 2009, the Defendant falsely represented to Plaintiff that he was experienced in representing clients in immigration matters including applications to become a naturalized United States citizen ("N-400 Application").

4.  In the fall of 2009, the Defendant had never previously represented a person in connection with an N-400 Application.

. . .

12. In April, 2010, Plaintiff paid Defendant the sum of $750.00 to pay the filing fee in connection with Plaintiff's N-400 Application.

13. On December 15, 2010, Plaintiff paid Defendant $1,200.00 in [sic] investigate the title to a condominium in Dallas County, Texas.

. . .

29. Defendant failed to disclose that he had never represented a person in connection with an N-400 Application prior to Plaintiff's application.

. . .

31. Plaintiff relied on Defendant's misrepresentations and omissions to his detriment.

32. Defendant's misrepresentations and omissions were committed knowingly.

33. Plaintiff incurred actual damages in the amount of $23,750, being the amount paid by Plaintiff to Defendant.

34. Plaintiff paid Defendant the sum of $1,200.00 in connection with the investigation of the title to a condominium in Dallas County, Texas.

35. $28,210.00 is a reasonable and necessary amount for attorney's fees for representing Plaintiff in this case.

The trial court also made 12[2] conclusions of law; the following are relevant to this appeal:

1. Plaintiff is a consumer as defined by §17.45(4) TEX. BUS. & COMM. CODE.

2. By falsely represented [sic] to Plaintiff that he was experienced in representing clients in immigration matters including N-400 Applications, Defendant violated §17.46(a)(5)[3] TEX. BUS. & COMM. CODE.

3. By failing to advise Plaintiff that he had no experience in representing clients in immigration matters including N-400 Applications, Defendant violated §17.46(a)(5)[4] TEX. BUS. & COMM. CODE.

4. Defendant's violations of §17.46 TEX. BUS. & COMM. CODE allow Plaintiff to seek relief pursuant to §17.50(a)(3) TEX. BUS. & COMM. CODE.

. . .

6. Plaintiff is entitled to the actual damages trebled for a total amount of $71,250.00[.]

. . .

---

[2] The conclusions of law contained two 8s.

[3] McLeod points out that the trial court's conclusions of law refer to subsection (a) instead of subsection (b). Subsection (a) does not contain any further subsections; subsection (b) contains the "laundry list" of DTPA violations. McLeod does not challenge the trial court's findings on this basis. We conclude that the trial court intended to refer to subsection (b) and that this is a clerical error.

[4] *Id*.

8.    Because of Defendant's breach of fiduciary duty, Defendant shall disgorge all amounts paid him by Plaintiff as attorney's fees including the $1,200.00 payment made on December 15, 2010.

. . .

9.    Plaintiff is entitled to reasonable and necessary attorney's fees in the amount of $28,210.00.

10.   Plaintiff is entitled to contingent attorney's fees in the event of appeal in the amount of $7,500.00 if successfully defended at the Court of Appeals and an additional $5,000.00 if successfully defended at the Texas Supreme Court.

### III. EVIDENCE OF LIABILITY AND DAMAGES

In issue one, McLeod challenges the sufficiency of the evidence to support many of the trial court's findings of fact and conclusions of law that he was liable to Gyr for actual damages under the DTPA and for breach of fiduciary duty. In numerous subparts under this issue, McLeod argues, among other things, that Gyr's claims under the DTPA and for breach of fiduciary duty are actually fractured claims for professional negligence, the DTPA claim is barred by the professional services exemption, and there is no evidence of reliance, a material non-disclosure, producing cause, unconscionability, and damages. He also argues that the damages are manifestly too large.

### A. Standard of Review

Findings of fact in a case tried to the court have the same force and effect as jury findings, and we review the court's findings by the same standards used to review challenges to the sufficiency of the evidence to support jury findings. *Thornton v. Dobbs*, 355 S.W.3d 312, 315 (Tex. App.—Dallas 2011, no pet.). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *Id*. In our review, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.

2005).  If more than a scintilla of evidence supports the finding, the legal sufficiency challenge fails. *Thornton*, 355 S.W.3d at 315.  In a factual sufficiency review, we consider all the evidence and determine whether the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Id*.  The trial court, as factfinder in a bench trial, is the sole judge of the credibility of the witnesses.  *Id*.  We review a trial court's conclusions of law de novo to determine whether the trial court correctly drew the legal conclusions from the facts.  *Id*.

### B.  Analysis

A consumer may maintain a DTPA action where the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically listed in section 17.46(b) and relied on by the consumer to his detriment is a producing cause of the consumer's economic damages. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (West 2011). The trial court concluded that McLeod violated the following provisions of section 17.46(b):

> (5)     representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; [and]

> (24)    failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]

*Id*. § 17.46(b)(5), (24).  We begin our analysis by examining McLeod's challenges to the evidence supporting the trial court's conclusion that he violated section 17.46(b)(5).

#### 1. Professional Negligence

McLeod initially argues that there is no evidence to support the trial court's conclusion because the substance of Gyr's allegation under section 17.46(b)(5) is "lack of skill" and, as a result, Gyr's DTPA claim is actually a fractured professional negligence claim.  He also argues that his services fall within the "professional services exemption" of the DTPA because the

essence of his service was "providing advice, judgment, or opinion." *Id.* § 17.49(c) (West Supp. 2013).[5] We construe these two subparts to make the same argument—that Gyr improperly fractured a legal malpractice claim into claims for violation of the DTPA and breach of fiduciary duty. But McLeod did not raise these arguments below and is raising them for the first time on appeal.[6] As a result, McLeod presents nothing for our review on this issue. TEX. R. APP. P. 33.1 (stating necessity for raising complaint in trial court to preserve complaint for review on appeal); *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999) (rules "require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment"); *Bell v. Mortgage Elec. Registration Sys., Inc.*, No. 05-06-00427-CV, 2007 WL 914759, at *4 (Tex. App.—Dallas Mar. 28, 2007, no pet.) (mem. op.) (same).

### 2. Evidence of detrimental reliance

McLeod next argues that "Gyr failed to prove the necessary element of reliance for recovery on his laundry list claims [by] fail[ing] to testify that he relied upon any alleged misrepresentation by McLeod" or that "this information was important to him[.]"

A consumer must show that he detrimentally relied on the defendant's false, misleading, or deceptive act or practice. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(B); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012). In presenting evidence of detrimental reliance, there is no requirement that a consumer use the actual words "rely" or "reliance." *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 677 (Tex. App.—Fort Worth 2010, no pet.).

In this case, Gyr did not use the word "reliance" in his testimony, but he did testify that he told McLeod in December 2009 that he wanted to become a naturalized United States citizen;

---

[5] Section 17.49 was amended in 2011 after this lawsuit was filed, but those amendments did not change the substance of subsection (c). For that reason, we cite the current version of the statute.

[6] McLeod argues that a legal sufficiency challenge may be raised for the first time on appeal and that he is really challenging the sufficiency of the evidence to support the DTPA judgment. He contends that Gyr tried to recast a professional negligence claim into a DTPA claim. But, regardless of the merits of his argument, we otherwise address the legal sufficiency challenge to the DTPA judgment below and reject his argument.

that his father's 90th birthday was in June 2010 and he "would like to go see [his] father"; that McLeod said, "no problem, no problem"; that McLeod said he "specialized" in immigration; and that he believed McLeod was an expert in immigration matters, "in particular becoming naturalized United States Citizens," based on McLeod's representations. Gyr retained McLeod in December 2009 to file the N-400 application on his behalf and paid him $23,000 for an application process that was never completed by McLeod. Gyr missed his father's 90th birthday celebration and ultimately retained another lawyer's services and paid that lawyer a fraction of McLeod's fee to become a naturalized United States citizen. A reasonable inference from this evidence is that Gyr retained McLeod based on McLeod's false representation concerning his expertise in handling immigration matters including N-400 applications and that McLeod's representation of his expertise was important to Gyr because of the trip the following summer to celebrate his father's 90th birthday. We conclude that this evidence constitutes more than a scintilla of evidence on the issue of detrimental reliance and, consequently, is legally sufficient to support the trial court's finding that Gyr detrimentally relied on McLeod's false representation.

### 3. *Standing/producing cause*

In two subparts, McLeod argues that Gyr did not use his own money to acquire McLeod's services, and, as a result, cannot establish standing to sue McLeod or prove McLeod's conduct was a producing cause of Gyr's injury. McLeod contends that "Gyr might suffer damages if he has some obligation to return the money his girlfriend and son provided for his attorney fees."

#### a. Standing

Although McLeod did not raise standing below, standing affects the trial court's subject matter jurisdiction and may be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). To have standing to sue under the

DTPA, a party must be a consumer. TEX. BUS. & COM. CODE ANN. § 17.50(a). To be a consumer under the DTPA, a party must show that he sought or acquired goods or services by purchase or lease. *Id*. § 17.45(4) (defining "consumer"). And he must show that the goods or services purchased or leased form the basis of the complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex. 1987); *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985). The purpose of making misrepresentations actionable under the DTPA "is 'to ensure that descriptions of goods or services offered for sale are accurate.'" *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 480 (Tex. 1995) (quoting *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980)). The DTPA does not require the consumer to be the person who actually purchased or leased the services. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) ("Privity of contract with a defendant is not required for the plaintiff to be a consumer."); *Kennedy*, 689 S.W.2d at 892–93 (DTPA's language does not require "that the consumer must himself be the one who purchases or leases" the goods or services).

McLeod does not cite authority for his argument that Gyr cannot establish standing to sue because he received the money he used to acquire McLeod's services from other people and did not personally lose "a dollar." Gyr testified, however, that he acquired McLeod's legal services for the purpose of filing an N-400 application to become a naturalized United States citizen, and his complaint arises from false representations made in connection with the purchase of those services. Regardless of the source of the funds or Gyr's obligation to repay them, Gyr is a consumer under the DTPA and has standing to sue McLeod. *See Kennedy*, 689 S.W.2d at 892–93; *Bus. Staffing, Inc. v. Viesca*, 394 S.W.3d 733, 742–43 (Tex. App.—San Antonio 2012, no pet.).

### b. Producing cause

The DTPA requires the consumer to show that the defendant's deceptive conduct was a producing cause of the consumer's injury. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1). "Producing cause" means "a substantial factor which brings about the injury and without which the injury would not have occurred." *Doe*, 907 S.W.2d at 481. This requires evidence that the consumer was adversely affected by the defendant's deceptive conduct. *Id.* (citing *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987)).

McLeod argues that Gyr cannot show producing cause because Gyr received the money he used to acquire McLeod's services from other people. But McLeod does not cite authority for his argument and, as we previously stated, it is not necessary that the consumer be the person who actually purchased or leased the services to recover under the DTPA. *Amstadt*, 919 S.W.2d at 649; *Kennedy*, 689 S.W.2d at 892–93. The evidence showed that Gyr paid McLeod $23,000 in legal fees to process the N-400 application, that McLeod did not complete the process, and that Gyr hired another lawyer to file the application on his behalf. Consequently, we conclude that Gyr presented evidence of producing cause.

### 4. Damages

Under this subpart, McLeod argues that the evidence is factually insufficient to support the DTPA damages award and that the damages are manifestly too large. He contends that Gyr's damages are at most $13,000 because those are the only cash payments that "could arguably be considered Gyr's personal funds." As we have explained, however, it does not matter for purposes of a DTPA claim whether Gyr or someone else provided the money Gyr used to acquire McLeod's services. *Kennedy*, 689 S.W.2d at 892–93. Gyr offered evidence through his testimony and copies of checks that he paid McLeod $23,000 for legal services in connection with the N-400 application. There is no contrary evidence. However, the trial court found that

Gyr was damaged in the amount of $23,750 by McLeod's violation of the DTPA. In addition to the $23,000 in attorney's fees that Gyr paid McLeod, this damages award included $750 for a filing fee that Gyr did not plead and did not prove. The record does not indicate the basis for the $750 in damages awarded by the trial court, and Gyr concedes the evidence is insufficient to support this portion of the damages award under the DTPA.

When we review a post-answer default judgment and conclude that the evidence is insufficient to support the judgment, ordinarily we would reverse the judgment and remand the cause for a new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) (per curiam). However, because the evidence supports a damages award of $23,000, but does not support the award of $23,750, we conclude that we may suggest a remittitur of $750. TEX. R. APP. P. 46.3; *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 176 (Tex. App.—Dallas 2011, pet. denied). Under these facts, Gyr should be given the option of accepting the remittitur or having the case remanded for a new trial. TEX. R. APP. P. 46.3; *Hernandez*, 343 S.W.3d at 176. If the remittitur is timely filed, we will modify and affirm the judgment in accordance with the remittitur. TEX. R. APP. P. 46.3; *Hernandez*, 343 S.W.3d at 177. If the remittitur is not timely filed, we will reverse the judgment on Gyr's DTPA claim and remand for a new trial. TEX. R. APP. P. 46.3; *Hernandez*, 343 S.W.3d at 177.

### 5. *Other sufficiency challenges*

Under additional subparts, McLeod argues that there is no evidence to support the trial court's conclusion that he made a material omission under section 17.46(b)(24) and engaged in unconscionable conduct regarding his billing practices under section 17.50(a)(3). Because we have already decided against McLeod on all the issues he raised with regard to his violation of section 17.46(b)(5), we do not need to decide whether there is evidence to support the trial court's conclusion that he also violated other provisions of the DTPA. *Main Place Custom*

–13–

*Homes, Inc. v. Honaker*, 192 S.W.3d 604, 625 (Tex. App.—Fort Worth 2006, pet. denied) (stating because evidence sufficient to support violation of at least one laundry list prohibition, no need to address contentions as to remaining DTPA violations); *see also* TEX. R. APP. P. 47.1 (opinion must address every issue necessary to final disposition of appeal).

### 6. *Proof of allegations in pleading*

In this subpart, McLeod argues that the "conduct on which Plaintiff Gyr relied in his prove-up is not supported by his pleading, and no evidence supports the DTPA claims in his pleading." In a related subpart, and construing McLeod's brief liberally, he contends that Gyr's pleading did not allege a claim for breach of fiduciary duty arising out of the $1,200 in legal fees for the condominium title investigation, he did not have fair notice of that claim, and Gyr did not show he had standing to pursue that claim. We will review these arguments as claims that the petition did not give McLeod fair notice of Gyr's claims. *See Westcliffe, Inc. v. Bear Creek Constr., Ltd.*, 105 S.W.3d 286, 291 (Tex. App.—Dallas 2003, no pet.).

A petition will support a post-answer default judgment unless (1) the cause of action pleaded is not within the jurisdiction of the court, (2) the petition does not give the defendant fair notice of the claim asserted, or (3) the petition shows the claim is invalid. *Stoner v. Thompson*, 578 S.W.2d 679, 684–85 (Tex. 1979); *Westcliffe*, 105 S.W.3d at 291. A plaintiff must use "plain and concise language" when asserting a cause of action. TEX. R. CIV. P. 45. A plaintiff's petition also must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). The purpose of fair notice pleading is to provide the defendant with sufficient information to determine "the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007).

With respect to Gyr's DTPA claim, McLeod argues that Gyr's amended petition alleged "only three specific allegations of misconduct" and only one of those related to the N-400 application: "misrepresentation that McLeod was experienced in handling immigration matters such as N-400 applications." He contends that the "[j]udgment . . . is based on a prove-up that both embellishes the pleaded allegations beyond those which McLeod had fair notice, and adds completely new ones to boot." But McLeod does not identify any specific conduct about which Gyr testified that McLeod contends was not included within Gyr's amended petition; he does not identify the specific testimony or other evidence that "embellishes" the pleaded allegations or why it did not constitute fair notice; and he does not identify any specific testimony or evidence that constitute "completely new [allegations] to boot." As a result, the argument is not sufficient to allow us to examine his complaint about unpleaded DTPA allegations. *See* TEX. R. APP. P. 38.1(i).

However, to the extent McLeod argues that he was not given fair notice because the amended petition alleged that McLeod said he was experienced in immigrations matters "such as" N-400 applications, but the trial testimony showed that McLeod said he was experienced in immigration matters "including" N-400 applications, we are unpersuaded. We conclude that Gyr alleged a DTPA violation arising out of McLeod's false representation concerning his expertise in handling N-400 applications with sufficient particularity to give McLeod fair notice of the nature and basis of the complaint and the type of evidence that might be relevant to the controversy. *See Low*, 221 S.W.3d at 612; *Stoner*, 578 S.W.2d at 683; *Westcliffe*, 105 S.W.3d at 292.

With respect to the trial court's judgment for damages of $1,200 for breach of fiduciary duty, we agree with McLeod that Gyr's amended petition did not allege a breach of fiduciary duty claim arising out of the $1,200 paid to McLeod for the condominium title investigation. A

judgment must be based on the pleadings. *Stoner*, 578 S.W.2d at 682–83. Consequently, we modify the trial court's judgment to delete the award of $1,200 in damages for breach of fiduciary duty. *See id*. at 685.

## IV. ADDITIONAL DAMAGES AND ATTORNEY'S FEES

In issue two, McLeod argues that there is no or insufficient evidence to support the award of $47,500 in additional damages under the DTPA because Gyr presented no evidence of a knowing violation of the DTPA. He also challenges the trial court's award of attorney's fees.

### A. Additional Damages under the DTPA

The trial court found that McLeod's "misrepresentations and omissions were committed knowingly." McLeod argues that because the trial court "made a global finding . . . of multiple knowing violations," the evidence must "support multiple 'knowing' misrepresentations and omissions[.]" But he does not cite authority to support his argument that a consumer is required to prove multiple knowing violations of the DTPA in order to recover additional damages, and the express language of the statute and case authority do not support his argument. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a) (stating "A consumer may maintain an action where *any* of the following constitute a producing cause of economic damages" and listing false, misleading, or deceptive act or practice, breach of warranty, unconscionable action or course of action, *or* act or practice in violation of insurance code (emphasis added)); *see also Main Place Custom Homes*, 192 S.W.3d at 605 (declining to consider sufficiency of evidence issue on all alleged violations of the DTPA because evidence was sufficient to support one violation and then considering evidence to support a knowing violation).

The DTPA authorizes a prevailing consumer's recovery of "not more than three times the amount of economic damages" for conduct that was committed knowingly. TEX. BUS. & COM. CODE ANN. § 17.50(b)(1). "'Knowingly' means actual awareness, at the time of the act or

practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim[.]" *Id.* § 17.45(9). "Actual awareness" means "that a person knows that what he is doing is false, deceptive, or unfair." *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53–54 (Tex. 1998).

Here, Gyr testified that before he retained McLeod to handle the N-400 application, McLeod told Gyr that he "specialized" in immigration matters and handled N-400 applications. In his deposition, McLeod admitted that at the time Gyr retained him to file the N-400 application, he had never filed an N-400 application before. Based on this evidence, a reasonable factfinder could conclude that at the time McLeod made the representation to Gyr concerning his expertise, McLeod was actually aware that the representation was false. *See Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 731 (Tex. App.—Austin 2000, no pet.). Consequently, we conclude that the evidence is legally sufficient to support the trial court's conclusions that McLeod's false representation was made knowingly and that Gyr was entitled to treble damages on his DTPA claim. However, because we have suggested a remittitur of $750 of the actual damages upon which the treble damages were calculated, we suggest an additional remittitur of $1,500 in treble damages. *See* TEX. R. APP. P. 46.3; *Hernandez*, 343 S.W.3d at 176–77. If both remittiturs are timely filed, we will modify the judgment on Gyr's DTPA claim and affirm as modified. TEX. R. APP. P. 46.3. If the remittiturs are not timely filed, we will remand the cause to the trial court. *Id.*

### B. Attorney's Fees

A consumer who prevails on his DTPA claim "shall be awarded court costs and reasonable and necessary attorneys' fees." TEX. BUS. & COM. CODE ANN. § 17.50(d). The trial court awarded Gyr $28,210 in attorney's fees through trial and $12,500 in conditional appellate

attorney's fees. McLeod argues that there is no or factually insufficient evidence to support the award of attorney's fees and that the attorney's fees were not segregated.

With regard to attorney's fees through trial, Frazier testified that he was "familiar with the prices charged by attorneys of similar background and experience in Dallas County . . . with respect to the charges that I've charged in this case representing Mr. Gyr in connection with the Deceptive Trade Practices Act claim." He offered his billing statement showing the specific services he performed, when he performed them, and the amount of time he worked on each specific service, and he testified that his fee for all services performed was $28,210 for 80.6 hours at the rate of $350 per hour. *See Long v. Griffin*, No. 11-1021, 2014 WL 1643271, at *2 (Tex. Apr. 25, 2014) (per curiam). Frazier testified that he believed those fees "to be a reasonable and necessary attorney's fee . . . through the trial of this case[.]" There is no contrary evidence. This evidence is legally and factually sufficient to support the trial court's award of attorney's fees through trial of the cause. *See id.*; *see also Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517–18 (Tex. 1999); *Westcliffe*, 105 S.W.3d at 294.

With regard to the conditional attorney's fees for appeals, Gyr pleaded for "reasonable attorney's fees for any and all appeals in the various appellate courts," but Gyr conceded in oral argument, and we agree, that he did not present any evidence of attorney's fees for appeal. Consequently, we reverse the judgment awarding conditional appellate attorney's fees of $7,500 for an appeal to the court of appeals and $5,000 for an appeal to the Supreme Court of Texas and remand this issue to the trial court for a new trial. *See Dolgencorp of Tex.*, 288 S.W.3d at 930.

McLeod also argues that Frazier's attorney's fees were not segregated and not all of the fees were incurred for the DTPA claim. An argument that a party failed to segregate attorney's fees, however, must be preserved below by objection or in a motion for new trial. *See Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 145 (Tex. App.—Dallas 2006, no pet.).

McLeod did not raise this argument below by objection or in his motion for new trial and, consequently, presents nothing for our review on this issue. *Id.*

In summary, we sustain issue two in part. We affirm the trial court's conclusion that appellant committed a knowing violation of the DTPA, and we affirm the award of $28,210 for attorney's fees through trial. We reverse the award of conditional attorney's fees for appeals based on legally insufficient evidence and remand to the trial court for further proceedings consistent with this opinion.

## V. MOTION FOR NEW TRIAL

In issue three, McLeod argues that the trial court abused its discretion by denying his motion for new trial.

### A. Standard of Review

We review a trial court's decision to deny a motion for new trial after a post-answer default for abuse of discretion. *Dolgencorp of Tex.*, 288 S.W.3d at 926; *Tactical Air Defense Servs., Inc. v. Searock*, 398 S.W.3d 341, 344 (Tex. App.—Dallas 2013, no pet.). A trial court does not abuse its discretion unless it acts in an arbitrary or unreasonable manner, without reference to guiding rules and principles. *Litman v. Litman*, 402 S.W.3d 280, 285 (Tex. App.—Dallas 2013, pet. denied).

### B. Applicable Law

The requirements for setting aside a post-answer default judgment are the same as for a no-answer default judgment. *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966). A defendant must (1) establish that the failure to appear for trial was not intentional or the result of conscious indifference, but was due to mistake or accident; (2) set up a meritorious defense; and (3) demonstrate that granting a new trial will not cause delay or otherwise injure the plaintiff.

–19–

*Dolgencorp of Tex.*, 288 S.W.3d at 925–26 (citing three-prong test as announced in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939)).

**C. Analysis**

McLeod's motion for new trial did not cite *Craddock*, did not address any of the prongs of the test announced in *Craddock*, and did not attach any evidence except the parties' settlement agreement. Additionally, neither McLeod nor his lawyer signed an affidavit to support the motion.

At the hearing on his motion, McLeod did not specifically cite *Craddock*, but he argued that he had "a meritorious defense and that there was [sic] genuine issues of material fact which would have precluded a summary judgment from being rendered in this case." As his meritorious defense, McLeod argued "that there was a contract for performance that had adequate consideration that was agreed between the parties and there's no guarantee as to outcome of said performance. . . . The parties attended and agreed to mediation and an agreement was articulated and signed by all the parties. It is our position that by signing the agreement there was a triggering of the doctrines of collateral estoppel as well as res judicata." McLeod's lawyer also argued that if Gyr's lawyer had called him instead of emailing him, he "would have let counsel know that either one of us was supposed to go ahead and turn this compromised settlement agreement to the Court." McLeod also argued that he thought the settlement agreement meant "there would be no reason for the trial. So I thought [the trial notice] was an erroneous sending of the trial notice."

On appeal, McLeod argues that "this issue should be judged only by the first prong of *Craddock* because the record fails to reflect that Defendant was served or had notice of Plaintiff's motion to reinstate, or the order of reinstatement." He argues that he "was therefore deprived of due process required by the 14th Amendment in the same sense as a party who has

no notice of a trial setting." But as we have noted, McLeod did not attach an affidavit to his motion for new trial nor did he offer any evidence at the hearing on the motion. In other words, McLeod did not set out any facts below that might constitute evidence of lack of notice. *See In re B.A.E.*, No. 05-12-01113-CV, 2013 WL 5827851, at *1 (Tex. App.—Dallas Oct. 29, 2013, pet. filed) (supp. mem. op. on reh'g). "[T]he law presumes that a trial court will hear a case only after proper notice to the parties." *In re B.A.E.*, No. 05-12-01113-CV, 2013 WL 4041551, at *2 (Tex. App.—Dallas Aug. 9, 2013, pet. filed) (mem. op.). Additionally, McLeod did not raise a due process argument below. *See* TEX. R. APP. P. 33.1 (stating requirements for preserving issue for appellate review).

But even considering the first prong under *Craddock*, we conclude that McLeod did not establish that his failure to appear was not the result of conscious indifference. *Litman*, 402 S.W.3d at 285. "Conscious indifference" has been defined to mean the failure to take action that would seem obvious to a reasonable person under the same circumstances. *In re R.R.*, 189 S.W.3d 915, 917 (Tex. App.—Dallas), *rev'd on other grounds*, 209 S.W.3d 112 (Tex. 2006) (per curiam).

The standard states:

A failure to appear is not intentional or due to conscious indifference within the meaning of the rule merely because it is deliberate; it must also be without adequate justification. Proof of such justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied. Also, conscious indifference means more than mere negligence.

*Smith v. Babcock Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam).

McLeod's lawyer admitted in the hearing on his motion for new trial that he received notice of the trial setting and disregarded it because the case had settled. He did not attempt to advise the court of his whereabouts on the day of trial, and, instead, simply ignored the trial setting notice. It was within the trial court's discretion to conclude that McLeod and his lawyer

–21–

failed to appear for trial as the result of intentional conduct or conscious indifference. *See Smock v. Fischel*, 207 S.W.2d 891, 892 (Tex. 1948) (holding trial court did not abuse discretion by proceeding to trial when defendant's counsel was in trial in another county because attorney made no effort to resolve conflicting trial settings and failed to contact judge on day of trial to advise of attorney's whereabouts).

Additionally, the second prong of the *Craddock* test requires the movant to set up a meritorious defense. A motion "sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense." *Dolgencorp of Tex.*, 288 S.W.3d at 927 (citing *Ivy*, 407 S.W.2d at 214). McLeod attached the settlement agreement to his motion for new trial and argued that Gyr could have filed it with the trial court. But the settlement agreement required McLeod to sign an agreed judgment, the purpose of which was to protect Gyr if McLeod defaulted on the payments, and McLeod's lawyer ignored Gyr's and the mediator's repeated attempts to communicate with him about the agreed judgment.

And even assuming this was sufficient to set up a meritorious defense, McLeod did not allege in the motion for new trial and did not present any evidence to support the motion on the third prong of the *Craddock* test: that granting a new trial will not cause delay or otherwise injure the plaintiff. *See Dolgencorp of Tex.*, 288 S.W.3d at 929; *Dir., State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994). Because McLeod did not satisfy all three prongs of the *Craddock* test, the trial court did not abuse its discretion by denying the motion for new trial. We resolve issue three against appellant.

## VI. REINSTATEMENT OF THE CASE

In issue four, McLeod argues that the trial court abused its discretion by reinstating the case after it had been dismissed for failure to file a proposed judgment within 30 days from the announcement of settlement.

### A. Background

In June 2012, the trial court dismissed this case for "[f]ailure to furnish the Court Clerk with a proposed judgment or order within 30 days after rendition of judgment or announced settlement of the case." The following month, Gyr filed a sworn motion to reinstate the case stating that "[t]he failure of Plaintiff and his attorney to submit a proposed judgment was not due to a conscious indifference because Plaintiff had previously sent a form of the proposed judgment to Defendant's counsel, but Defendant's counsel has failed and refused to communicate or cooperate with Plaintiff's counsel at all." The motion contained a fiat setting the motion for hearing eight days after the date the motion was filed. The motion also contained a certificate of service, but the date of service was blank. There is no record of a hearing on that date, but the trial court signed an order reinstating the case on the same date as the hearing date. The order states that the trial court "considered said Motion and the evidence thereon, as well as the arguments of counsel . . . ." It does not state whether either party appeared.

### B. Standard of Review

We review a trial court's ruling on a motion to reinstate under civil procedure rule 165a for an abuse of discretion. *See Smith*, 913 S.W.2d at 468. Rule 165a(3) states that a "court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." TEX. R. CIV. P. 165a(3). The burden on

–23–

the movant "is essentially the same as that for setting aside a default judgment." *Smith*, 913 S.W.2d at 468 (citing *Craddock*, 133 S.W.2d at 124).

## C. Analysis

McLeod contends that the trial court abused its discretion by reinstating this case because the motion to reinstate "was set for hearing without proper service or conference, and the motion failed to provide sufficient grounds for reinstatement." However, as we previously stated in our analysis of McLeod's motion for new trial, "the law presumes that a trial court will hear a case only after proper notice to the parties." *In re B.A.E.*, 2013 WL 4041551, at *2. And McLeod did not file an affidavit or present any evidence at the hearing on his motion for new trial to support his argument that he did not receive notice of the hearing on the motion to reinstate.

McLeod also contends that the trial court applied a "double standard" to its consideration of Gyr's motion to reinstate. McLeod argues that if his reasons for failing to appear for trial "were insufficient to obtain a new trial, then plainly [Gyr]'s motion to reinstate cannot support the County Court's reinstatement order." We disagree. Gyr filed a sworn motion to reinstate stating that the reason he had not submitted a proposed judgment was because McLeod's lawyer "has failed and refused to communicate or cooperate with Plaintiff's counsel at all." On the same date that Gyr filed the motion to reinstate, he also filed a fourth motion to compel and request for sanctions, and the court set a hearing on the motion to compel for the same date as the hearing on the motion to reinstate. Gyr attached to the motion to compel copies of emails he sent to McLeod's lawyer asking him to review the proposed agreed judgment and to provide comments. Gyr presented evidence that he made several attempts to file a proposed agreed judgment before the dismissal date and, due to Newell's failure to cooperate with Gyr's lawyer, was unable to comply. McLeod's lawyer, on the other hand, received notice of the trial setting and chose simply to ignore it instead of advising the court that he believed the case had settled.

–24–

We conclude that the trial court acted within its discretion by concluding that Gyr's explanation for why he failed to present a proposed judgment by the court's stated deadline was not due to conscious indifference. We resolve issue four against appellant.

## VII. CONCLUSION

We suggest remittiturs in the amount of $750 in actual damages and $1,500 in treble damages on Gyr's DTPA claim. In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if Gyr files with this Court within fifteen (15) days from the date of this opinion a remittitur in the amount of $750 for actual damages and $1,500 in treble damages on his DTPA claim, we will modify the trial court's judgment to award Gyr $23,000 in actual damages and $46,000 in treble damages on his DTPA claim and affirm as modified. If the suggested remittiturs are not filed timely, we will reverse the trial court's judgment on the DTPA claim and remand the cause for further proceedings. We modify the judgment to delete the award of $1,200 in damages for breach of fiduciary duty. We affirm the trial court's judgment awarding Gyr $28,210 in attorney's fees for trial. We reverse the judgment awarding Gyr conditional attorney's fees for appeal and remand to the trial court for further proceedings.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

121607F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

BRUCE B. MCLEOD III, Appellant

No. 05-12-01607-CV          V.

ALFRED GYR, Appellee

On Appeal from the County Court at Law No. 2, Dallas County, Texas

Trial Court Cause No. CC-11-02708-B.

Opinion delivered by Justice Lang-Miers, Justices Myers and Lewis participating.

     We vacate our judgment dated May 5, 2014. This is now the judgment of the Court. In accordance with this Court's opinion of this date, we suggest remittiturs in the amount of $750 in actual damages and $1,500 in treble damages on Alfred Gyr's claim under the Texas Deceptive Trade Practices Act. In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if appellee files with this Court within fifteen (15) days from the date of this opinion a remittitur in the amount of $750 for actual damages and $1,500 in treble damages on his claim under the Texas Deceptive Trade Practices Act, we will modify the trial court's judgment to award appellee $23,000 in actual damages and $46,000 in treble damages on his claim under the Texas Deceptive Trade Practices Act and affirm as modified. If the suggested remittiturs are not filed timely, we will reverse the trial court's judgment on the claim under the Texas Deceptive Trade Practices Act and remand the cause for further proceedings. We **MODIFY** the judgment of the trial court to **DELETE** the award of $1,200 in damages on appellee's claim for breach of fiduciary duty. We **AFFIRM** the trial court's judgment awarding appellee $28,210 in attorney's fees for trial. We **REVERSE** the trial court's judgment awarding appellee conditional attorney's fees for appeal and remand to the trial court for further proceedings. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

     It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of August, 2014.