**REMITTITUR SUGGESTED; and Opinion Filed April 7, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00035-CV

## DAVID EOFF, Appellant
## V.
## CENTRAL MUTUAL INSURANCE COMPANY, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-09034**

# OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

David Eoff was involved in a traffic accident with Charles Cabaniss, an insured of Central Mutual Insurance Company (Central Mutual). Cabaniss filed a claim on Eoff's insurance policy, but the insurer denied coverage based on breach of contract by Eoff and because the vehicle Eoff was driving was not listed on his policy. Central Mutual reimbursed Cabaniss for his damages from the accident and sought to recover the payment from Eoff. Eoff agreed to pay Central Mutual $8,069.25 through payments of $75.00 per month. Central Mutual subsequently sued Eoff for breach of contract, contending he failed to make all the required payments. Eleven members of the jury found Eoff breached the contract and Central Mutual suffered damages of $5,519.25 from the breach. The trial court rendered judgment based on the jury's verdict.

In his first issue on appeal, Eoff contends the trial court did not have subject matter jurisdiction because Central Mutual failed to exhaust its administrative remedies. In three additional issues, Eoff argues the trial court erred by determining there was a valid contract between him and Central Mutual and there was legally and factually insufficient evidence that Central Mutual was the owner or holder of the promissory note, that he breached the agreement, or to support the damages awarded by the jury. We affirm the trial court's judgment, conditioned on Central Mutual's agreement to remit a portion of the damages it was awarded.

## Background

On March 27, 2008, Eoff and Cabaniss were involved in a traffic accident at an intersection. Eoff admitted he had a stop sign at the intersection and that Cabaniss did not, but asserted Cabaniss could have had some proportional responsibility for the accident because he "had time to honk" and, therefore, could have applied his brakes. Eoff provided Cabaniss with information regarding an insurance policy issued by Safeco Insurance Company (Safeco), and Cabaniss filed a claim with Safeco.

Safeco investigated the claim and, on April 15, 2009, informed Cabaniss that it was denying coverage based on "breach of contract on the part of the insured and the Suburban being operated by Mr. Eoff in the accident is not listed on his policy." According to Lina Richardson, a Central Mutual claims representative, Cabaniss made a claim under his policy with Central Mutual and Central Mutual paid for Cabaniss's damages from the accident.

Central Mutual sent a letter to Eoff on April 22, 2009 stating it had determined Eoff was at fault in the accident. Central Mutual informed Eoff that it had "made payments on this claim" and was now looking to Eoff "for reimbursement of the amounts paid to date." The letter gave Eoff the options of providing Central Mutual with information regarding insurance coverage, paying the amount or, if he could not pay the entire amount, making arrangements for payment.

The letter also informed Eoff that, if he was liable for the accident, failing to either pay or make arrangements for payment could result in revocation of his driving rights. Eoff failed to respond to the letter. Central Mutual sent a second letter to Eoff on May 19, 2009 stating that, if Eoff did not contact Central Mutual within fifteen days, "it will be necessary that we notify the Bureau of Motor Vehicles and ask that your driving privileges be revoked."

Eoff responded to Central Mutual, proposing the parties sign Form SR-19. Richardson described Form SR-19 as an agreement the parties can file with the Texas Department of Public Safety (DPS) indicting they have settled the matter to prevent the suspension of a driver's license based on a failure to have insurance. The Form SR-19 between Eoff and Central Mutual is titled "Installment Agreement" and states that Eoff agrees to pay Cabaniss and Central Mutual $8,069.25 through payments of $75.00 per month, with the first payment due on June 20, 2009. Although Eoff began making monthly payments in June 2009, the Form SR-19 was not signed by Eoff until October 26, 2010. Central Mutual signed the Form SR-19 on November 12, 2010 and sent the original form to the DPS. The parties stipulated that Eoff paid Central Mutual a total of $2,525.00.

According to Eoff, he did not agree to effect the settlement of claims and damages by using the Form SR-19; rather, he merely agreed to forestall the suspension of his driver's license. Eoff did not believe the Form SR-19, standing alone, was a contract. He asserted the document must be interpreted in the context of the Texas Administrative Code.

Terri Skillings, the office administrator for Central Mutual's attorney, testified Eoff's file was forwarded to their office in October 2011, and Eoff was notified he needed to make future payment through their office. Between October 2011 and August 2012, Eoff missed three payments. The last payment Eoff made was in August 2012.

–3–

Central Mutual sued Eoff on August 10, 2012, asserting he had breached the parties' agreement by not making all the required monthly payments. Eoff filed a counterclaim for money had and received, claiming Central Mutual had failed to comply with the DPS's regulations pertaining to the Form SR-19 and had not been authorized to sign the agreement. Eoff sought to recover the money he had "deposited" with Central Mutual.

At trial, eleven members of the jury found Eoff and Central Mutual entered into the installment agreement, Eoff failed to comply with the agreement, and Eoff's failure to comply was not excused due to Central Mutual's undue influence on Eoff or by its previous failure to comply with a material obligation of the agreement. The jury awarded Central Mutual $5,519.25.[1]

**Jurisdiction**

In his first issue, Eoff asserts the trial court did not have subject matter jurisdiction over this case because Central Mutual failed to exhaust its administrative remedies. Eoff contends the Legislature delegated rule-making authority to the DPS pursuant to the Texas Motor Vehicle Safety Responsibility Act, TEX. TRANSP. CODE ANN. §§ 601.001–.454 (West 2011 & Supp. 2014) (the Act), and the DPS promulgated regulations pertaining to Form SR-19, including a remedy of suspension of a driver's license following a default on an agreement made using Form SR-19. Eoff argues Central Mutual's claim is "solely and exclusively grounded in Form SR-19" and, after he failed to make the agreed payments, Central Mutual was required to administratively pursue the suspension of his driver's license.

When the Legislature grants an administrative agency the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute. *City of*

---

[1] The jury charge did not include a question relating to Eoff's counterclaim. The judgment states the trial court considered the counterclaim after the close of evidence and determined there was no evidence to support it and orders that Eoff take nothing on the counterclaim. The reporter's record does not include a ruling by the trial court on Eoff's counterclaim.

*Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013); *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). Generally, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Rhule* 417 S.W.3d at 442; *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). The exhaustion doctrine serves as a timing mechanism to ensure that the administrative process runs its course. *Rhule*, 417 S.W.3d at 442; *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights; rather, it aims to provide an orderly procedure by which aggrieved parties may enforce those rights. *Rhule*, 417 S.W.3d at 442; *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 792 (Tex. App.—Dallas 2012, pet. denied), *cert. denied*, 133 S. Ct. 2812 (2013). In other words, exhaustion of remedies "ensures that the administrative agency has the opportunity to resolve disputed fact issues within its exclusive jurisdiction before a court must address those issues." *Holmes v. Zurich Am. Ins. Co.*, 421 S.W.3d 766, 771–72 (Tex. App.—Dallas 2014, pet. denied). Until the claimant has exhausted applicable administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Rhule*, 417 S.W.3d at 442; *In re Entergy Corp*, 142 S.W.3d 316, 321–22 (Tex. 2004) (orig. proceeding).

Whether an agency has exclusive jurisdiction over a dispute is a question of law that we review de novo. *Emps. Retirement Sys. of Tex. v. Duenez*, 288 S.W.3d 905, 908 (Tex. 2009). The determination of whether the Legislature has vested exclusive jurisdiction in an agency requires examination and construction of the relevant statutory scheme. *Thomas*, 207 S.W.3d at 340 (citing *Subaru of Am., Inc.*, 84 S.W.3d at 221). An agency has exclusive jurisdiction when the Legislature expressly grants the agency exclusive jurisdiction or when a "pervasive

regulatory scheme" reflects legislative intent that an agency have the sole power to make the initial determination in the dispute. *Duenez*, 288 S.W.3d at 908–09; *Thomas*, 207 S.W.3d at 340.

The Act provides that a person may not operate a motor vehicle in Texas unless financial responsibility is established for the vehicle through one of the listed statutory means. TEX. TRANSP. CODE ANN. § 601.051 (West 2011). The Act is intended "to protect potential claimants from losses resulting from automobile accidents by requiring that all drivers obtain automobile liability insurance." *Hofstetter v. Loya Ins. Co.*, No. 01-10-00104-CV, 2011 WL 1631938, at *7 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (mem. op.) (quoting *Wright v. Rodney D. Young Ins. Agency*, 905 S.W.2d 293, 295 (Tex. App.—Fort Worth 1995, no writ)); *see also Nat'l Cnty. Mut. Fire Ins. Co. v. Johnson*, 879 S.W.2d 1, 2 (Tex. 1993) (interpreting predecessor statute). As relevant to this appeal, the Act undertakes to accomplish this purpose by requiring the DPS, under certain circumstances, to suspend the driver's license and vehicle registration of the owner or operator of a motor vehicle not covered by vehicle liability insurance policy after the vehicle is involved in an accident resulting in bodily injury or death or in damage to the property of one person of at least $1,000. TEX. TRANSP. CODE ANN. § 601.151–.153 (West 2011); *see also Gillaspie v. Dep't of Pub. Safety*, 259 S.W.2d 177, 180 (Tex. 1953) (interpreting predecessor statute).[2]

Before imposing a suspension, the DPS must find there is a reasonable probability that a judgment will be rendered against the person as a result of the accident. *Id.*§ 601.152(a)(2). It must also determine the amount of security sufficient to satisfy any judgment for damages resulting from the accident that may be recovered from the owner or operator. *Id.* § 601.154(a). In making these two determinations, the DPS may consider a report from the investigating

---

[2] The Act also requires the DPS to suspend the driver's license and vehicle registration of a person under other circumstances. *See* TEX. TRANSP. CODE ANN. §§ 601.191, .231, .331(a), .332 (West 2011).

–6–

officer, an accident report of a party involved in the accident, and an affidavit of a person who has knowledge of the facts. *Id.* § 601.154(c). The DPS makes these determinations only if it has not received, before the twenty-first day after the date it received a report of an accident, satisfactory evidence that the owner or operator of the vehicle has been released from liability or finally adjudicated not to be liable or has executed an acknowledged written agreement providing for the payment of an agreed amount in installments for all claims for injuries or damages resulting from the accident. *Id.* § 601.154(d).[3] The DPS may not require security of less than $1,000 or more than the minimum vehicle liability insurance coverage amounts established by statute. *Id.* § 601.154(b). The DPS may not suspend a driver's license or vehicle registration if the owner or operator of the vehicle deposits with the DPS the amount of security determined to be appropriate and files evidence of financial responsibility as required by statute. *Id.* § 601.153.

A suspension is effective until (1) the date the person files evidence of financial responsibility with the DPS; (2) the second anniversary of the date of the accident, if the DPS receives satisfactory evidence that, during the two year period, an action for damages arising out of the accident has not been instituted; or (3) the date the DPS receives satisfactory evidence of a release from liability or claims arising out of the accident, a final adjudication that the person is not liable for claims arising out of the accident, or an acknowledged written agreement providing for the payment of an agreed amount in installments for injuries or damages resulting from the accident. *Id.* § 601.162(a). However, if a suspension is terminated because the party entered into an installment agreement to pay for injuries or damages resulting from the accident, the DPS is required to suspend the driver's license or vehicle registration of the person when it receives

---

[3] Provided the necessary procedural steps are taken, the DPS's determinations may be reviewed in a hearing before the judge of the municipal court or the appropriate justice of the peace. *Id.* §§ 601.155–.157 (West 2011). The judge's determination that there is a reasonable probability that a judgment will be rendered against the vehicle owner or operator as a result of an accident may be appealed to the county court for a trial de novo. *Id.* § 601.158.

notice the person defaulted on the installment agreement. *Id.* § 601.162(b). A suspension following a notice of default on an installment agreement continues until (1) the person deposits and maintains security in an amount determined by the DPS and files evidence of financial responsibility; or (2) the second anniversary of the date security was required following the default if, during that period, an action on the agreement has not been instituted in a court in this state. *Id.*

As relevant to this appeal, the DPS has promulgated Safety Responsibility Regulations pursuant to the Act. *See* 37 Tex. Admin. Code §§ 25.1–25.21 (2009).[4] The regulatory scheme provides that the DPS will not take action concerning an accident unless (1) an officer's report resulting from an investigation of the crash clearly indicates one driver is at fault; or (2) a driver's crash report, containing two sworn statements from uninvolved witnesses, indicates one driver is at fault; and (3) the party at fault is not covered by liability insurance. *Id*. § 25.1(a). The DPS may also request documents relating to property damage and personal injuries suffered in the accident. *Id.* § 25.1(b)–(c). If the DPS receives sufficient information, it will issue a notice of suspension to the driver of the vehicle, the owner of the vehicle, or both. *Id.*§ 25.2(a). As relevant to this appeal, the suspension can be prevented by timely filing with the DPS a Form SR-19, described in the regulations as an installment agreement or other similarly styled document between the parties. *Id.* § 25.2(c)(4).

If a party defaults on the installment agreement, the other party may file with the DPS a Form SR-73, described in the regulation as a notice of default. *Id.* § 25.2(g). The DPS will then suspend the driver's license or the vehicle registration of the defaulting person unless compliance

---

[4] The Public Safety Commission controls the DPS and has the power to adopt rules considered necessary for carrying out the DPS's work. TEX. GOV'T CODE ANN. §§ 411.002,(a), 411.003(a), 411.004(2) (West 2012 & Supp. 2014); *see also* TEX. TRANSP. CODE ANN. §601.021 (West 2011). As relevant to this appeal, the DPS promulgated regulations in support of the Act on June 18, 2004. *See* 29 Tex. Reg. 3777–82, 5946–47 (2004). The regulations were amended on October 10, 2008, between the date of the accident and the date Eoff signed the Form SR-19. *See* 33 Tex. Reg. 6069–75, 8545 (2008). Because the amendments do not affect our substantive analysis, we need not decide which version of the regulations apply in this case. We cite to the current version for convenience.

with the agreement is shown through (1) a release, (2) a security deposit, (3) an installment agreement granted by order of a court where an agreed judgment has been rendered, or (4) a bankruptcy petition indicating "filed" by the court or a final order of bankruptcy. *Id.* If no judgment has been filed against the party at fault after two years from the date of the accident, for initial suspension, or two years from the date on the notice of default, for suspensions based on an installment agreement default, a suspension may be withdrawn if a party files a Form SR-60, described in the regulations as an application to waive requirement to deposit security. *Id.* § 25.2(h).

The statute and pertinent regulations also acknowledge that a judgment may result from a motor vehicle accident or from a suit on a settlement agreement resulting from an accident. *Id.* § 25.3(a). A judgment debtor may be subject to suspension of a driver's license or vehicle registration if the motor vehicle is not covered by a vehicle liability insurance policy and the judgment debtor fails to satisfy the judgment within sixty days. TEX. TRANSP. CODE ANN. § 601.331 (West 2011); 37 Tex. Admin. Code § 25.3. If the DPS receives a certified copy of the judgment; a Form SR-42, described in the regulations as a transcript of civil proceedings; and a Form SR-62, described in the regulations as a notice of unsatisfied judgment, it is required to send an order of suspension to the judgment debtor. *Id.* § 25.3(c)–(d). To lift the suspension, the judgment debtor must provide the DPS with (1) a release; (2) an installment agreement between the judgment debtor and the judgment creditor approved and signed by the judge of the court in which the judgment was rendered; (3) a Form SR-84, described in the regulations as a judgment creditor's consent to allow licensing; or (4) a bankruptcy petition indicating "filed" by the court, a final order of bankruptcy, or a discharge. *Id.* § 25.3(e).

Eoff contends that, because the DPS promulgated Form SR-19 and Central Mutual sent the completed form to the DPS, Central Mutual was required to exhaust its administrative

remedies following his default on the installment agreement by pursuing the suspension of his driver's license prior to seeking a judgment based on the default. However, nothing in the Act, or the regulations promulgated pursuant to the Act, gives the DPS the authority to be the final arbiter of either who was at fault in the accident, the amount of damages that should be awarded, or whether there was a default on an installment agreement or indicates the DPS should make the initial determination of these issues.[5] Further, both the statute and the regulations contemplate a judicial remedy following a default on a Form SR-19 installment agreement, indicating the suspension of Eoff's driver's license and vehicle registration is not the sole recourse available to Central Mutual. *See* TEX. TRANSP. CODE ANN. § 601.162(b)(2); 37 Tex. Admin. Code §§ 25.2(g)(3). Finally, nothing in the Act or the relevant regulations requires Central Mutual to request that the DPS suspend Eoff's driver's license or vehicle registration prior to pursuing a judicial remedy for breach of the installment agreement.

Considering the entire statutory and regulatory scheme, we conclude the DPS did not have exclusive jurisdiction over Central Mutual's claim for damages following Eoff's default on the installment agreement between the parties. Accordingly, Central Mutual was not required to exhaust any administrative remedies prior to filing suit against Eoff, and the trial court had jurisdiction over Central Mutual's claim. We resolve Eoff's first issue against him.

## Existence of a Contract

In his second issue, Eoff asserts that, as a matter of law, there was no contract between him and Central Mutual. Eoff specifically argues that Cabaniss did not sign the installment agreement and Central Mutual was not authorized to sign the agreement because it failed to

---

[5] In fact, the DPS's determination that there is a reasonable probability a judgment will be rendered as a result of an accident "may not be introduced in evidence in a suit for damages arising from that accident." TEX. TRANSP. CODE ANN. § 601.169 (West 2011). *See also* 37 Tex. Admin. Code§ 1.11(c) (2009) ("The department does not act to adjudicate or rectify injustices, inequities, or wrongs between individuals, but acts only to maintain order for the preservation and protection of society as a whole.).

–10–

submit proof to the DPS that it had reimbursed Cabaniss for his damages from the accident.[6] Whether a particular unambiguous agreement is an enforceable contract is a question of law that we review de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999); *Crisp Analytical Lab, L.L.C. v. Jakalam Props., Ltd.*, 422 S.W.3d 85, 89 (Tex. App.—Dallas 2014, pet. denied).

The elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; and (5) execution and delivery of the contract with an intent it become mutual and binding. *Goldman v. Olmstead*, 414 S.W.3d 346, 354 (Tex. App.—Dallas 2013, pet. denied). Eoff asserts that because Central Mutual did not provide evidence to the DPS that it paid for the damages Cabaniss suffered in the accident, it failed to prove the execution and delivery necessary for the formation of a contract. However, whether Central Mutual provided sufficient evidence to the DPS, along with the Form SR-19, to allow the DPS to either delay the suspension of Eoff's driver's license or vehicle registration following the accident or to suspend Eoff's driver's license or vehicle registration if he defaulted on the agreement, is not the issue in this case. Rather, the issue is whether the Form SR-19 is enforceable by Central Mutual against Eoff.

The evidence at trial established Central Mutual demanded that Eoff reimburse it for the money it paid to Cabaniss as a result of the accident. Eoff rejected the proposed agreement sent by Central Mutual and suggested the parties use Form SR-19 as their agreement, indicating it was a form of an agreement he was willing to sign to settle the dispute. In the completed Form

---

[6] In making this argument, Eoff relies on a DPS regulation providing:

> If evidence is received that the owners of the damaged property and/or individuals who have sustained personal injury have been paid by their insurance company, the acceptance portion of the installment agreement may be signed by an authorized representative of the insurance company.

37 Tex. Admin. Code § 25.2(c)(4)(D). This regulation was adopted by the DPS effective October 10, 2008, after the date of the accident but before Eoff signed the Form SR-19. *See* 33 Tex. Reg. 6070–71, 8545.

–11–

SR-19, Eoff agreed to pay Central Mutual $8,069.25 through installments of $75 per month. Eoff signed the agreement and returned it to Central Mutual. A representative of Central Mutual then signed the agreement. The evidence at trial was sufficient to establish that a contract existed between Eoff and Central Mutual. The fact Central Mutual informed the DPS of the agreement had no impact on the validity of the contract or the enforceability of the contract as between Eoff and Central Mutual. We resolve Eoff's second issue against him.

### Sufficiency of the Evidence

In his third and fourth issues, Eoff challenges the legal and factual sufficiency of the evidence to establish: that "Central Mutual is the owner or [h]older of the note since Central [Mutual] admitted it could not sign and Charles Cabiness is the payee;" that he breached the agreement; or the amount of damages awarded to Central Mutual.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence, we credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005)). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam); *see also City of Keller*, 168 S.W.3d at 810. The final test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827.

In conducting a factual sufficiency review, we weigh all the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). We view the evidence in a neutral light and set aside the finding only if it is so contrary to the overwhelming weight of the evidence that

the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

*Owner or Holder of the Promissory Note*

In his third issue, Eoff first argues the evidence was legally and factually insufficient to establish that Central Mutual was the owner or holder of the promissory note. Eoff specifically asserts (1) Central Mutual did not show it was the owner of the promissory note because Cabiness is the named payee and there was no evidence he transferred the agreement to Central Mutual, and (2) Central Mutual did show it was the holder of the promissory note because it sent the original agreement to the DPS.

Eoff's argument under this issue contains limited citation to authority and no substantive analysis, and we question whether he has preserved this argument for appellate review. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing error may be waived by inadequate briefing). However, substantively Eoff's position, as presented, has no merit. Even if the installment agreement is a promissory note, *see Edlund v. Bounds*, 842 S.W.2d 719, 724 (Tex. App.—Dallas 1992, writ denied) (op. on reh'g) ("In short, a note is a written unconditional promise to pay another a certain sum of money at a certain time."), it is not negotiable. *See Manandhar v. Jamshed*, No. 02-11-00027-CV, 2011 WL 3835980, at *2 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op.) (promissory note was not negotiable because it was not payable to bearer or to order).[7] Between the original

---

[7] A "negotiable instrument" is:

[A]n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

–13–

parties, a promissory note that has not been negotiated is treated as a simple contract governed by the fundamental rules applicable to contract law. *Guthrie v. Nat'l Homes Corp.*, 387 S.W.2d 158, 159 (Tex. Civ. App.—Fort Worth 1965), *judgment reformed*, 394 S.W.2d 494 (Tex. 1965). In addressing Eoff's second issue, we have already concluded there was a valid and enforceable contract between Eoff and Central Mutual. Accordingly, the evidence is both legally and factually sufficient to establish Central Mutual's right to bring this claim.

*Breach*

Eoff also argues in his third issue that the evidence was legally and factually insufficient to establish he breached the agreement. Eoff's argument is premised on his beginning to make payments to Central Mutual in June 2009, but not signing the installment agreement until October 2010. Eoff claims that, considering all the payments he made since June 2009, all sums he owed after he signed the agreement were paid.

In June 2009, Eoff agreed to make monthly payments of $75 to Central Mutual and began making those payments. There is nothing in the record to suggest the payments beginning in June 2009 were meant to apply only to amounts owed after the agreement was finally signed in October 2010, and it is undisputed that, after he signed the agreement, Eoff did not make all payments required by the agreement. Accordingly, we conclude the evidence was legally and factually sufficient to establish Eoff breached the agreement.

We resolve Eoff's third issue against him.

---

(A) an undertaking or power to give, maintain, or protect collateral to secure payment;

(B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

TEX. BUS. & COM. CODE ANN. § 3.104(a) (West Supp. 2014). The installment agreement is not a negotiable instrument because it does not state it is payable to bearer or to order. *See id.*; *Manadhar*, 2011 WL 3835980, at *2 n.5.

*Damages*

In his fourth issue, Eoff contends the damages awarded were excessive because Central Mutual failed to give him notice of default and acceleration. Eoff asserts that, without these required notices, Central Mutual was entitled to recover only the past due payments at the time of trial, not the entire outstanding balance on the agreement. Based on the standard of review set out in Eoff's brief, we construe this argument as a challenge to the legal and factual sufficiency of the evidence to support the damages awarded by the jury.

The general rule in a breach-of-contract case is that damages should put the plaintiff in the same economic position he would have been in had the contract been performed. *Am. Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990); *Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 726 (Tex. App.—Dallas 2014, no pet.). When recovery is sought on an obligation payable in installments, a separate cause of action arises for each missed payment. *Guyton v. Colonial Am. Cas. & Sur. Co.*, No. 05-05-00239-CV, 2006 WL 412696, at *2 (Tex. App.—Dallas Feb. 23, 2006, no. pet.) (mem. op.) (citing *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 465 (Tex .App.—Austin 1994, no writ)). This principle applies in determining the accrual of a cause of action with respect to promissory notes that require periodic payments. *Id.* Generally, absent an effective acceleration of the note, a payee who sues based on a debtor's failure to make a required payment under an installment note is entitled to recover only the past due payments. *See Williamson v. Dunlap*, 693 S.W.2d 373, 374 (Tex. 1985) (per curiam) (citing *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex. 1975)).

However, where a party who is contractually obligated to make monthly payments to another repudiates the contract, the payee may elect to either (1) accept the repudiation and bring a suit to recover the present value of all he would have received had the contract been performed;

or (2) treat the repudiation as inoperative and sue for damages as they accrue when the time for performance under the contract is due. *Pollack v. Pollack*, 39 S.W.2d 853, 855–57 (Tex. Comm'n App. 1931, holding approved), *rehearing denied*, 46 S.W.2d 292 (Tex. Comm'n App. 1932); *TeleResource Corp. v. Accor N. Am., Inc.*, 427 S.W.3d 511, 518 (Tex. App.—Fort Worth 2014, pet. denied). The party alleging an anticipatory breach must show a fixed intention by the other party to abandon, renounce, and refuse to perform the contract in the future. *Moore v. Jenkins*, 211 S.W. 975, 976 (Tex. 1919); *P&E Contractors, Inc. v. Brown*, No. 05-10-00743-CV, 2012 WL 3061777, at *2 (Tex. App.—Dallas July 27, 2012, no pet.) (mem. op.); *Parkway Dental Assocs,, P.A. v. Ho & Huang Properties, L.P.*, 391 S.W.3d 596, 606 (Tex. App.— Houston [14th Dist.] 2010, no pet.). The repudiation may consist of either words or actions indicating an intention that the party is not going to perform in the future according to the terms of the contract. *Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex. App.—Corpus Christi 1989, no writ); *Builder's Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no writ). To constitute repudiation, a party to a contract must absolutely and unconditionally refuse to perform the contract without just excuse. *Pollack*, 39 S.W.2d at 857; *Bans Props., L.L.C. v. Housing Auth. of Odessa*, 327 S.W.3d 310, 315 (Tex. App.—Eastland 2010, no pet.).

In this case, the evidence established that Eoff failed to make three payments under the installment agreement between October 2011 and August 2012. The last payment Eoff made was in August 2012, the same month that Central Mutual filed this lawsuit. However, Central Mutual offered no evidence that, prior to its filing suit, Eoff absolutely and unconditionally refused to perform under the contract. Further, the installment agreement does not contain an acceleration clause, and nothing in the record indicates Central Mutual took any action suggesting it believed it had the authority to accelerate the note. Because Central Mutual failed

to establish an anticipatory repudiation by Eoff and the payments due under the installment agreement were not accelerated, Central Mutual was entitled to recover only the past due payments under the installment agreement and was not entitled to recover the remaining balance on the installment agreement. Accordingly, the evidence was legally insufficient to support the jury's damages award, and we resolve Eoff's fourth issue in his favor.

Ordinarily, an appellate court renders judgment when sustaining a no-evidence issue. *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007). However, if there is evidence to support some award of damages, rendition is inappropriate. *Id.* In that scenario, we must remand for a new trial, unless we can suggest a remittitur. *Id.*; *see also* TEX. R. APP. P. 46.3; *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). "The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded." *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987).

The evidence at trial established that Eoff failed to make three payments between October 2011 and August 2012 and thirteen payments between September 2012 and September 2013 when the trial court entered judgment. The evidence, therefore, supports a damages award of $1,200.[8] Because the evidence supports a damages award of $1,200, but does not support an award of $5,519.25, we conclude we may suggest a remittitur of $4,319.25. Under these facts, Central Mutual should be given the option of accepting the remittitur or having the case remanded for a new trial. TEX. R. APP. P. 46.3; *Larson*, 730 S.W.2d at 641; *McLeod v. Gyr*, 439 S.W.3d 639, 650 (Tex. App.—Dallas 2014, pet denied). If the remittitur is timely filed, we will modify and affirm the judgment in accordance with the remittitur. TEX. R. APP. P. 46.3; *McLeod*, 439 S.W.3d at 650.

---

[8] As noted above, a new cause of action would accrue on each payment Eoff failed to make after September 2013.

If the remittitur is not timely filed, we will reverse the judgment and remand for a new trial. TEX. R. APP. P. 46.3; *McLeod*, 439 S.W.3d at 650.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

140035F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID EOFF, Appellant

No. 05-14-00035-CV          V.

CENTRAL MUTUAL INSURANCE
COMPANY, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-12-09034.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, we suggest a remitter in the amount of $4,319.25 on appellee Central Mutual Insurance Company's claim for breach of contract. In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if appellee Central Mutual Insurance Company files with this Court within fifteen (15) days from the date of this opinion a remittitur in the amount of $4,319.25, we will modify the trial court's judgment to award appellee Central Mutual Insurance Company $1,200, along with pre- and post-judgment interest, on its claim for breach of contract and affirm as modified. If the suggested remittitur is not filed timely, we will reverse the trial court's judgment and remand the cause for further proceedings.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of April, 2015.