**Opinion issued April 30, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-24-00303-CV**

_____

**DIOGU KALU DIOGU, II, Appellant**

**V.**

**COMMISSION FOR LAWYER DISCIPLINE, Appellee**

---

**On Appeal from the 458th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 21-DCV-279744**

---

## MEMORANDUM OPINION

Appellant, Diogu Kalu Diogu, II, appeals the trial court's judgment of disbarment in this attorney disciplinary case brought by appellee, Commission for Lawyer Discipline ("the Commission"). In five issues, Diogu contends that (1) he did not violate the Texas Disciplinary Rules of Professional Conduct ("TDRPC"),

as alleged by the Commission, (2) the trial court erred by conducting a jury trial before his motion for recusal was ruled on, (3) the trial court lacked jurisdiction to adjudicate his disciplinary case, (4) his TDRPC violations, even if true, did not warrant disbarment, and (5) the trial court erred by allowing his motion for new trial to be overruled by law.

We affirm.

## Background

On January 8, 2021, the Commission[1] filed its first amended original disciplinary petition alleging that Diogu committed professional misconduct by violating several provisions of the TDRPC in connection with two separate underlying civil matters: the "Melanson" matter and the "EIC" matter.

## A. The Melanson Matter

In May 2018, Diogu filed a civil action styled *Diogu Law Firm PLLC and Diogu Kalu Diogu II v. Melanson et al.*, Cause No. 18-DVC 251076, in the 434th District Court of Fort Bend County, Texas. In that case, the defendants moved to dismiss Diogu's claims under the Texas Citizen's Participation Act ("TCPA")[2] and sought attorney's fees and sanctions against Diogu.

---

[1] The Commission, a standing committee of the State Bar of Texas, is an administrative agency of the Texas Judicial Department. *See* TEX. GOV'T CODE ANN. §§ 81.011(a), 81.076(b).

[2] TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011.

The Commission alleged in its amended petition that Diogu, during the course of the Melanson litigation and while representing himself and his law firm:

- Misrepresented that he had never previously been sanctioned on any matter related to the TCPA in his pleadings and in open court;

- Misrepresented that he could not afford to pay court costs in an attempt to proceed *in forma pauperis* in his appeal of the matter before the Fourteenth Court of Appeals; and

- Filed a motion to disqualify/recuse the trial judge and the administrative judge of the Eleventh Administrative Judicial Region; the judge assigned to hear the motion found it "groundless and filed in bad faith and/or for the purpose of harassment, and . . . clearly brought for unnecessary delay, without sufficient cause, and in furtherance of dilatory tactics and to unnecessarily delay further legal proceedings"; the assigned judge awarded monetary sanctions against Diogu and his law firm for filing the motion to recuse/disqualify.

## B.   The EIC Matter

Diogu represented the plaintiff in a case styled *Experience Infusion Center, LLC v. Texas Health + Aetna Insurance Holding Co. and Aetna Life Insurance Co.*, Civil Action No 4:17-cv-0034, in the United States District Court for the Southern District of Texas, Houston Division.  The Commission alleged in its amended petition that Diogu accepted the case on a contingent fee basis but failed to obtain a signed, contingent fee agreement from his client.  After a two-year hiatus from the case, Diogu learned of an imminent settlement in the lawsuit.  The Commission alleged that Diogu drafted a contingent fee agreement, which he filed in federal district court, misrepresenting that both he and his client had signed the contingency

3

fee agreement. His client filed a sworn declaration stating that he did not sign the agreement, either electronically or in person, and he did not authorize anyone to sign it on his behalf.

## C. TDRPC Violations

In its amended petition, the Commission alleged that Diogu's conduct in the Melanson and EIC matters constituted violations of the TDRPC, specifically:

- 3.01 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.");

- 3.02 ("In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.");

- 3.03(a)(1) ("A lawyer shall not knowingly . . . (1) make a false statement of material fact or law to a tribunal . . . .");

- 3.03(a)(5) ("A lawyer shall not knowingly . . . (5) offer or use evidence that the lawyer knows to be false."); and

- 8.04(a)(3) ("A lawyer shall not . . . (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . .").

Diogu answered, asserting a general denial and several affirmative defenses.[3]

---

[3] During the course of litigation, Diogu filed numerous pre-trial motions, including a pleading entitled, "Plea to the Jurisdiction; Motion to Dismiss under TCPA Sections 27.003 or 27.011(A); Motion for Sanction under the Inherent Power of the Court; Second Supplemental Motion for Sanction and Response to Motion to Strike," and a first amended motion to dismiss for lack of jurisdiction.

In November 2023, following a hearing, the trial court granted Diogu's motion for trial continuance in part and set the case for a jury trial on January 30, 2024.

In December 2023, Diogu removed his disciplinary case to federal court. Concluding that it lacked subject matter jurisdiction, the federal district court remanded the case to state court.

On January 23, 2024, Diogu filed an amended motion to disqualify and recuse Judge Gonzales from his disciplinary case. In his motion—filed three years after Judge Gonzales had been assigned to preside over his case and a week before trial—Diogu asserted that it was improper for Judge Gonzales to preside over the case because she had an interest in the outcome, failed to disclose that she was a family law judge, and lacked subject matter competence. The Commission filed its response, asserting that no ground existed to either recuse or disqualify Judge Gonzales.

Pursuant to Texas Rule of Civil Procedure 18a, after Judge Gonzales declined to recuse herself voluntarily, Diogu's motion to recuse/disqualify was referred to the presiding judge of the Eleventh Administrative Judicial Region of Texas. Judge Brown entered an order on January 24, 2024, denying Diogu's motion and amended motion to recuse/disqualify Judge Gonzales. The court concluded that Diogu's motion urged disqualification but "fail[ed] to allege any grounds for disqualification

5

as required by Rule 18b of the Texas Rules for Civil Procedure." The order stated that Diogu's motion to recuse Judge Gonzales also failed to comply with Rule 18 because the motion, which complained of rulings beginning in November 2023, was filed less than ten days before the pretrial hearing and was therefore untimely, and it complained mainly of Judge Gonzales's rulings which cannot form the sole basis of a motion to recuse.[4]

---

[4] Texas Rule of Civil Procedure 18b states:

> (a) *Grounds for Disqualification.* A judge must disqualify in any proceeding in which:
>
> (1) the judge has served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter;
>
> (2) the judge knows that, individually or as a fiduciary, the judge has an interest in the subject matter in controversy; or
>
> (3) either of the parties may be related to the judge by affinity or consanguinity within the third degree.

TEX. R. CIV. P. 18b(a).

Rule 18a states, in relevant part:

> (b) *Time for Filing Motion.*
>
> (1) Motion to Recuse. A motion to recuse:
>
> (A) must be filed as soon as practicable after the movant knows of the ground stated in the motion; and
>
> (B) must not be filed after the tenth day before the date set for trial or other hearing unless, before that day, the movant neither knew nor reasonably should have known:
>
> (i) that the judge whose recusal is sought would preside at the trial or hearing; or
>
> (ii) that the ground stated in the motion existed.

TEX. R. CIV. P. 18a(b).

On January 25, 2024, Diogu filed a motion to disqualify Judge Brown and to "reconsider and declare void" her order denying his motion to disqualify/recuse Judge Gonzales. According to Diogu, Judge Brown should have disqualified herself because she had a "direct interest" in the case, and thus, her order denying Diogu's motion to disqualify/recuse Judge Gonzles was void, and that his motion to recuse Judge Brown was timely. The Commission filed its response to Diogu's motion the same day.

On January 26, 2024, the trial court held a pretrial hearing by Zoom. Judge Gonzales advised the parties that the trial would go forward on January 30, 2024.

On January 29, 2024, Judge Brown entered an order declining to voluntarily recuse herself and referring Diogu's motion to disqualify her to the Chief Justice of the Supreme Court of Texas. Senior Judge Trapp, presiding judge of the Second Administrative Judicial Region, was assigned to rule on Diogu's pending motion to disqualify Judge Brown.

On January 29, 2024, Diogu filed a petition for writ of mandamus and motion to stay the pending jury trial in his attorney disciplinary case.[5] This Court denied Diogu's motion to stay the trial the same day. The next day—the first day of trial—

---

[5] *See In re Diogu*, No. 01-24-00074-CV, 2024 WL 483158 (Tex. App.—Houston [1st Dist.] Feb. 8, 2024, orig. proceeding) (mem. op.).

Diogu filed another motion to stay with an amended petition for writ of mandamus. This Court denied his second motion to stay and amended petition.

On January 30, 2024, Judge Gonzales conducted a jury trial at which Diogu did not appear. At the conclusion of trial, the jury found that Diogu had committed professional misconduct as follows:

> While representing himself and/or Diogu Law Firm PLLC in the Melanson Case, Diogu . . . asserted or controverted an issue in that proceeding in the absence of reasonable belief that the basis for doing so was not frivolous in violation of TDRPC [rule] 3.01;
>
> While representing himself and/or Diogu Law Firm PLLC in the Melanson Case, Diogu . . . took a position that unreasonably increased the costs or other burdens of the Melanson Case or unreasonably delayed resolution of the matter in violation of TDRPC [rule] 3.02;
>
> While representing himself and/or Diogu Law Firm PLLC in the Melanson Case, Diogu . . . knowingly made a false statement of material fact or law to a tribunal in violation of TDRPC [rule] 3.03(a)(1);
>
> While representing himself and/or Diogu Law Firm PLLC in the Melanson Case, Diogu . . . knowingly offered or used evidence that he knew to be false in violation of TDRPC [rule] 3.03(a)(5); and
>
> While representing himself and/or Diogu Law Firm PLLC in the Melanson Case, Diogu . . . engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of TDRPC [rule] 8.04(a)(3).

After considering all the evidence presented and argument, the factors set out in the Guidelines for Imposing Sanctions, and additional evidence regarding the

appropriate sanction to be imposed, Judge Gonzales signed a judgment of disbarment on January 30, 2024.

On February 2, 2024, Diogu filed a motion to set aside default judgment and for new trial. Judge Gonzales held a hearing on Diogu's motion for new trial. The motion was overruled by operation of law.

On February 7, 2024—after the jury trial in his attorney disciplinary case had concluded—Diogu filed an amended motion to disqualify Judge Brown. Following a hearing, Judge Trapp entered an order denying Diogu's amended motion to disqualify Judge Brown and to reconsider and declare void her order denying Diogu's motion to disqualify Judge Gonzales; Diogu's motion for reconsideration of his amended motion was also denied.

On March 4, 2024—more than one month after the judgment of disbarment had issued—Diogu again sought to remove his attorney disciplinary case to federal court. Concluding that it lacked federal subject matter jurisdiction over the case, the federal district court remanded the case to state court.[6]

**Issues on Appeal**

Diogu presents the following five issues on appeal:

- "Whether Appellant Violated Rules 3.01, 3.02, 3.03(a)(1), 3.03(a)(5), and 8.04(a)(3), of the Texas Disciplinary Rules of Professional Conduct as Alleged by the Commission For Lawyer Discipline";

---

[6] In its order, the federal district court noted that Diogu "was disbarred after years of Texas state court litigation, including a jury trial."

9

- "Whether the District Court Erred by Conducting a Trial Prior to the Supreme Court Ruling on the Recusal of the 11th Administrative Judge Susan Brown, Under Rule 18a of the Texas Rules of Civil Procedure by Honorable Judge Robert Trapp of the 2nd Administrative Judicial Division and Senior District Judge";

- "Whether the District Court Had Jurisdiction to Adjudicate the Disciplinary Hearing in Violation of Rule 3.072 of the Texas Rules of Disciplinary Procedure After the Expiration of 180 Days from the Date of Diogu's Original Answer";

- "Whether the Alleged Violations by Diogu . . . , Even if True, Rose to the Level of Disbarment"; and

- "Whether Judge . . . Gonzalez erred in Electing to Overrule Diogu's Motion for New Trial by Operation of Law."

### Violations of the TDRPC

In his first issue, Diogu asserts that the Commission failed to prove that he violated TDRPC 3.01, 3.02, 3.03(a), 3.03(a)(5), and 8.04(a)(3). We construe Diogu's assertion as a challenge to the sufficiency of the evidence presented by the Commission supporting the jury's findings that Diogu engaged in professional misconduct and the trial court's judgment of disbarment rendered on the jury's verdict.[7]

---

[7] Under the "Argument & Authority" section for his first issue, Diogu sets out the standards of review for legal and factual evidentiary sufficiency challenges.

## A.    Inadequate Appellate Record

An appellant bears the burden of bringing forth a record that enables the appellate court to determine whether his complaints constitute reversible error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990); *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 582 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Issues depending on the state of the evidence cannot be reviewed without a complete record. *See Deaguero v. Comm'n for Lawyer Discipline*, 05-22-01102-CV, 2024 WL 1326486, at *3 (Tex. App.—Dallas Mar. 28, 2024, no pet.) (mem. op.). That is, when an appellant complains of the legal or factual sufficiency of the evidence, the appellant's burden to show that the judgment is erroneous cannot be discharged in the absence of a complete or an agreed statement of facts. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991). If the appellate record does not include a complete reporter's record, absent circumstances not relevant here,[8] "the reviewing court must presume that the evidence . . . was adequate to support the [resulting] decision." *MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 109 (Tex. 2023).

Here, Diogu did not file in this Court the reporter's record from his jury trial. Thus, we have no way of assessing whether the evidence was sufficient to support

---

[8]    *See* TEX. R. APP. P. 34.6(c) (contemplating appellant's request for partial reporter's record with "a statement of the points or issues to be presented on appeal" and clarifying procedures and presumptions in such circumstances).

the jury's findings of misconduct and the trial court's judgment of disbarment. Because Diogu's evidentiary challenge requires review of the portion of the record not brought forward on appeal, we must presume that the trial court's judgment was supported by sufficient evidence that Diogu engaged in professional misconduct in violation of rules 3.01, 3.02, 3.03(a), 3.03(a)(5), and 8.04(a)(3). *See Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 151 (Tex. 2015) (citing *Guthrie v. Nat'l Homes Corp.*, 394 S.W.2d 494, 495 (Tex. 1965) (stating that, in absence of reporter's record, appellate court must presume that trial court's judgment is supported by sufficient evidence)).

**TCPA Does Not Apply**

In connection with his first issue, Diogu also argues that that the TCPA "recognizes an absolute privilege for statements made in judicial proceedings, shielding them from defamation or civil actions," and "[it] applies to this case." He reasons that because the Commission is not one of the entities listed in the TCPA's exemptions, the Commission's allegation that he violated TDRPC 3.01 "[cannot be] upheld under the TCPA." Diogu's argument is unavailing.

The TCPA, which is embodied in Chapter 27 of the Texas Civil Practice and Remedies Code, "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see* TEX. CIV. PRAC. &

REM. CODE ANN. §§ 27.001–.011. The Texas Legislature amended the TCPA, effective September 1, 2019, for actions filed on or after that date, as the Commission's attorney disciplinary action was. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. If an action falls under one of the TCPA's twelve exemptions, the TCPA does not apply and may not be used to dismiss the action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010. The TCPA does not apply to, among others things, "a disciplinary action or disciplinary proceeding brought under Chapter 81, Government Code, or the Texas Rules of Disciplinary Procedure." *Id.* § 27.010(10). The Commission's amended petition states, in part: "Petitioner brings this disciplinary action pursuant to the STATE BAR ACT, TEXAS GOVERNMENT CODE ANNOTATED §81.001, et seq. (West 2013); the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT; and the TEXAS RULES OF DISCIPLINARY PROCEDURE." Diogu's disciplinary action is not subject to the TCPA.

We overrule Diogu's first issue.

### Motions to Disqualify/Recuse

In his second issue, Diogu asserts that the trial court erred by conducting a trial before the Texas Supreme Court had ruled on his motion to recuse Judge Brown in violation of Texas Rule of Civil Procedure 18a.

## A. Standard of Review and Applicable Law

"[W]hen faced with a motion to recuse, a judge has only two options: grant the motion to recuse or refer the motion to another judge for a ruling." *Whatley v. Walker*, 302 S.W.3d 314, 325–26 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). We review an order denying a motion to recuse for an abuse of discretion. *In re M.C.M.*, 57 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see* TEX. R. CIV. P. 18a(j)(1)(A) ("An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment."). A trial court abuses its discretion by acting in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

## B. Analysis

The chronology of Diogu's efforts to recuse and/or disqualify in this case is as follows:

- Diogu filed his motion to disqualify and/or recuse Judge Gonzales from presiding over his attorney disciplinary case;

- Diogu amended his motion to disqualify and/or recuse Judge Gonzales;

- Judge Gonzales declined to voluntarily recuse herself and Diogu's motion to recuse/disqualify was referred to the presiding judge of the Eleventh Administrative Judicial Region of Texas, Judge Susan Brown;

- Judge Brown issued her order denying Diogu's motion and amended motion to disqualify/recuse Judge Gonzales;

14

- Diogu filed his motion to disqualify Judge Brown and sought reconsideration of Judge Brown's order denying his request to disqualify/recuse Judge Gonzales;

- Judge Brown issued an order declining to voluntarily recuse herself and referring Diogu's motion to disqualify her to Chief Justice Hecht of the Texas Supreme Court;

- Judge Gonzales conducted a jury trial in Diogu's attorney disciplinary case on January 30, 2024;

- Chief Justice Hecht assigned Judge Trapp to hear Diogu's motion to disqualify Judge Brown;

- Diogu filed an amended motion to disqualify Judge Brown, seeking reconsideration of her order denying his request to disqualify/recuse Judge Gonzales and again seeking Judge Gonzales's disqualification;

- Judge Trapp held a hearing on Diogu's motion to disqualify Judge Brown; and

- Judge Trapp issued an order denying Diogu's motion to disqualify Judge Brown.

Diogu argues that the filing of his motion to recuse and disqualify Judge Brown "should have served as a stay on further proceedings" in his attorney disciplinary case before Judge Gonzales. He asserts that the Texas Supreme Court assigned the motion to recuse Judge Brown to Judge Trapp, but that "without waiting for the ruling of Judge Trapp on the recusal matter, on January 30, 2024, Judge Gonzales conducted a jury default trial that resulted in his disbarment.

In support of his argument, Diogu cites Texas Rule of Civil Procedure 18a governing recusal and disqualification of judges. Rule 18a(f)(2)(A), which sets out

the duties of the "respondent judge," provides: "If a motion is filed before evidence has been offered at trial, the respondent judge must take no further action in the case until the motion has been decided, except for good cause stated in writing or on the record." TEX. R. CIV. P. 18a(f)(2)(A). According to Diogu, when Judge Gonzales proceeded to conduct a trial on the merits of his disciplinary action, without waiting for Judge Trapp to rule on his motion to recuse Judge Brown, she "violated the tenets of Rule 18a" and "[t]he judgment of disbarment against [him] on January 30, 2024, is therefore legally void." Diogu's argument is misplaced.

Rule 18a(f) sets out the duties of the "respondent judge," i.e., the judge whose recusal or disqualification is sought. *See* TEX. R. CIV. P. 18a(c)(2). It provides that, "[i]f a motion is filed before evidence has been offered at trial," the respondent judge "must take no further action in the case until the motion to recuse or disqualify has been decided." *See* TEX. R. CIV. P. 18a(f)(2)(A). Thus, the rule contemplates that the judge who is sitting in the case will take no further action in the case until the motion to recuse or disqualify her has been decided. Here, Diogu's motion and amended motion to recuse or disqualify Judge Gonzales were denied by Judge Brown. Diogu's argument that Judge Gonzales should not have conducted the trial

while the motion to recuse and disqualify Judge Brown was still pending misapprehends rule 18a.[9]

To the extent that Diogu complains that his motion to disqualify Judge Brown that he filed before trial began, in which he sought reconsideration of Judge Brown's order denying his request to disqualify and/or recuse Judge Gonzales, should have stayed the proceedings, this argument is equally unavailing. This Court considered and rejected a similar argument in *Diogu v. Ratan-Aporn*, 01-14-00694-CV, 2015 WL 3982531 (Tex. App.—Houston [1st Dist.] June 30, 2015, pet. denied) (mem. op.). There, Diogu filed a motion for reconsideration of the denial of his motion to recuse the trial judge. *See id.* at *3. On appeal, he argued that the trial court erred in proceeding with the trial and should have stayed its proceedings because his motion for reconsideration was still pending.[10] *See id.* This Court disagreed,

---

[9]    The United States Bankruptcy Court for the Southern District of Texas, Houston Division reached the same conclusion in *In re Attorney Suspension of Diogu*, Case No: 24-396, 2024 WL 1460159 (Bankr. S.D. Tex. Apr. 3, 2024) (mem. op.). There, Diogu moved to quash an order in his Chapter 13 bankruptcy case suspending him from practice before the bankruptcy court on the ground that the underlying state court disbarment order was void. *See id.* at *2. Diogu raised the same argument he does here: that moving to recuse Judge Brown also worked to stay Judge Gonzales's further action in the disciplinary case. *See id.* The bankruptcy court disagreed, concluding that Diogu's argument "misreads the statute." *Id.* The court explained: "Rule 18a(f)(2)(A) stays further action by the respondent judge, meaning the judge against whom the motion is filed. Therefore, Judge Gonzales' authority to proceed in the case was unaffected by the motion to recuse Judge Brown." *Id.*

[10]    In *Diogu v. Ratan-Aporn*, 01-14-00694-CV, 2015 WL 3982531 (Tex. App.—Houston [1st Dist.] June 30, 2015, pet. denied) (mem. op.), Diogu sued his wife and

concluding that "[n]othing in rule 18a or the case law interpreting it supports Diogu's position that the trial court could not proceed with the ongoing trial while a Motion for Reconsideration was pending." *Id.*

We conclude that Judge Gonzales did not err by proceeding to trial on Diogu's disciplinary case while his motion to recuse Judge Brown was pending.

We overrule Diogu's second issue.

## Trial Court's Jurisdiction

In his third issue, Diogu asserts that the trial court conducted trial more than 180 days after he filed his original answer, and thus, it lacked jurisdiction to adjudicate his disciplinary case.

In support of his assertion, Diogu relies on Texas Rule of Disciplinary Procedure ("TRDP") 3.07,[11] which provides, in relevant part: "Disciplinary Actions shall be set for trial on a date not later than 180 days after the date the answer is filed, except for good cause shown." TEX. RULES DISCIPLINARY P. R. 3.07. Diogu filed his original answer on February 23, 2021, and trial on his disciplinary case was held

---

Yauwapa Ratan-Aporn, alleging that his marriage was induced by fraud and that Aporn conspired with his wife to defraud him. *See id.* at *1.

[11] In his briefing on appeal, Diogu mistakenly cites the rule as TRDP 3.072, which does not exist.

on January 30, 2024, nearly three years after Diogu filed his answer.  According to Diogu, the use of "shall" in rule 3.07 makes the 180-day time period mandatory rather than directory, and thus, the trial court was without jurisdiction to conduct the jury trial in his disciplinary case.  We disagree.

TRDP 17.05, "Effect of Time Limitations," provides:

The time periods provided in Rules 2.10, 2.12, 2.15, 2.17C, 2.17E, 2.17P, 2.25, 3.02, 3.04, . . . 7.11, 9.02, 9.03, 10.02, 11.01, 11.08, and 12.06(d) are mandatory.  All other time periods herein provided are directory only and the failure to comply with them does not result in the invalidation of an act or event by reason of the noncompliance with those time limits.

TEX. RULES DISCIPLINARY P. R. 17.05.  Rule 17.05 does not include rule 3.07 among those rules with mandatory time periods; instead, rule 3.07 falls within the provision that "[a]ll other time periods herein provided are directory only and the failure to comply with them does not result in the invalidation of an act or event by reason of the noncompliance with those time limits." *Id.*  Therefore, noncompliance with rule 3.07 does not invalidate a trial court's jurisdiction.  Other courts have reached the same conclusion.  *See. e.g.*, *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding "noncompliance with Rule 3.07 does not invalidate a trial court's jurisdiction"); *Favaloro v. Comm'n for Lawyer Discipline,* 13 S.W.3d 831, 836 (Tex. App.—Dallas 2000, no pet.) (rejecting appellant's argument that resetting of trial date outside

180-day period provided in rule 3.07 invalidated trial court's jurisdiction because, under rule 17.05, rule 3.07 was directory in nature, not mandatory).

We overrule Diogu's third issue.

## Sanction of Disbarment

In his fourth issue, Diogu argues that the TDRPC violations alleged against him, even if true, do not rise to the level of disbarment. He asserts that the sanction imposed against him by the trial court far exceeds the violations alleged against him. According to Diogu, if a sanction is, in fact, appropriate, "the Court should at most issue a private reprimand to him and order that he take some classes on disciplinary rules with the Texas Bar."

## A. Standard of Review and Applicable Law

A trial court has broad discretion to determine the consequences of professional misconduct. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994); *Rosas v. Comm'n for Lawyer Discipline*, 335 S.W.3d 311, 320 (Tex. App.—San Antonio 2010, no pet.) "The violation of one disciplinary rule is sufficient to support a finding of professional misconduct." *Cantu v. Comm'n for Lawyer Discipline*, No. 13-16-00332-CV, 2020 WL 7064806, at *20 (Tex. App.—Corpus Christi–Edinburg Dec. 3, 2020, no pet.) (mem. op.). The judgment of a trial court in a disciplinary proceeding may be so light or heavy as to amount to an abuse of discretion. *Kilpatrick*, 874 S.W.2d at 659. We will reverse the trial court's decision

concerning the consequences of professional misconduct only if an abuse of discretion is shown. *Rosas*, 335 S.W.3d at 320. As noted above, a trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1986). "The mere fact that a trial court may decide a matter differently than an appellate court does not demonstrate an abuse of discretion." *Cantu*, 2020 WL 7064806, at \*20 (citing *Downer*, 701 S.W.3d at 242).

For attorney discipline cases involving grievances filed prior to June 1, 2018, TRDP 3.10 sets forth several factors for trial courts to consider in determining the appropriate sanctions for misconduct. *See* TEX. RULES DISCIPLINARY P. R. 3.10 (repealed June 1, 2018). For cases involving grievances filed after June 1, 2018, the Texas Supreme Court replaced these factors with guidelines in Part XV of the current version of the TRDPs. *See* Order Adopting Amendments to the Texas Rules of Disciplinary Procedure, Misc. Docket No. 18-9031 (2018); TEX. RULES DISCIPLINARY P. R. 15.01–.09 *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B. In this case, the grievance upon which the Commission based its amended petition was filed on or about July 9, 2019; therefore, we apply the guidelines in the current version of the rules.[12]

---

[12] Diogu cites TRDP 3.01 which is no longer in effect.

Rule 15.02 provides that "[i]n imposing a sanction after a finding of [p]rofessional [m]isconduct, the disciplinary tribunal should consider the following factors: (a) the duty violated; (b) the [r]espondent's level of culpability; (c) the potential or actual injury caused by the respondent's misconduct; and (d) the existence of aggravating or mitigating factors." TEX. RULES DISCIPLINARY P. R. 15.02. Sanctions include: (1) disbarment, (2) suspension, (3) public reprimand, and (4) private reprimand, *see* TEX. RULES DISCIPLINARY P. R. 1.06FF, and may include additional ancillary requirements such as restitution and payment of reasonable attorney's fees. *See id.*

Rule 15.04 identifies which sanctions are generally appropriate for the various categories of professional misconduct. *See* TEX. RULES DISCIPLINARY P. R. 15.04. In particular, "[d]isbarment is generally appropriate when: (a) a [r]espondent abandons the practice and causes serious or potentially serious injury to a client; or (b) a [r]espondent knowingly fails to perform services for a client, fails to adequately communicate with a client, fails to provide competent representation, or fails to abide by client decisions and causes serious or potentially serious injury to a client; or (c) a [r]espondent engages in a pattern of neglect with respect to client matters, inadequate client communications, lack of competent representation, or failure to abide by client decisions and causes serious or potentially serious injury to a client. *See* TEX. RULES DISCIPLINARY P. R. 1504(A)(1). Finally, after misconduct has been

established, rule 15.09 permits a disciplinary tribunal to consider aggravating and mitigating circumstances in deciding the appropriate sanction to impose. *See* TEX. RULES DISCIPLINARY P. R. 15.09.

## B. Analysis

In its judgment, the trial court stated that "the acts, omissions, and conduct on the part of [Diogu] constitute a violation of Rules 3.01, 3.02, 3.03(a)(l), 3.03(a)(5), and 8.04(a)(3) of the Texas Disciplinary Rules Of Professional Conduct." With respect to its sanction determination, the trial court stated:

> After considering the above finding of professional misconduct, the Court heard and considered additional evidence regarding the appropriate sanction to be imposed against Respondent and, having considered all the evidence presented and argument and further considering the factors set out in the Guidelines for Imposing Sanctions in Part XV of the TEXAS RULES OF DISCIPLINARY PROCEDURE as well as the facts established in the case, the Court finds that the proper discipline of Respondent, is a Disbarment.

As with his first issue, Diogu's challenge to the trial court's sanction determination—which was expressly based on the jury's finding that Diogu committed professional misconduct, additional evidence and argument presented regarding the appropriate sanction, and the sanctioning guidelines set out in Part XV of the TRDPs—requires us to review the evidence presented to the jury and the trial court in support of the sanction imposed. Because Diogu failed to bring forth the reporter's record of the jury trial, we are unable to assess the evidence and arguments presented, and the factors the trial court considered, in support of the trial court's

23

sanction determination. *See Deaguero*, 2024 WL 1326486, at \*10 (finding no error in imposition of sanctions where appellant failed to provide complete appellate record precluding review of evidence of misconduct); *Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (presuming trial court's sanction of three-year suspension was supported by evidence because reporter's record of sanction hearing was not provided to court). Because we must presume the omitted evidence would support the trial court's sanction determination, we overrule Diogu's fourth issue. *See Christiansen*, 782 S.W.2d at 843.

## Motion for New Trial

In his fifth issue, Diogu asserts that Judge Gonzales erred in allowing his motion for new trial to be overruled by operation of law.

### A. Standard of Review and the *Craddock* Test

We review the trial court's denial of a motion for new trial for an abuse of discretion. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). We will not disturb the trial court's ruling on the motion absent a showing of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984).

The question of whether a trial court abused its discretion in denying a motion for new trial following a default judgment is governed by the three-pronged test set out by the Texas Supreme Court in *Craddock v. Sunshine Bus Lines, Inc.*, 133

24

S.W.2d 124 (Tex. 1939). To be entitled to a new trial, the movant must show that (1) his failure to answer was not intentional or the result of conscious indifference, but the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no undue delay or otherwise injure the non-defaulting party. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex. 2002). When a movant meets all three elements of the *Craddock* test, the trial court abuses its discretion if it does not grant a new trial. *Bitter v. Comm'n for Lawyer Discipline*, Nos. 02-12-00197-CV to 02-12-00199-CV, 2014 WL 1999315, at *3 (Tex. App.—Fort Worth May 15, 2014, no pet.) (mem. op.).

The first *Craddock* element is satisfied when the movant's factual assertions, "if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012). Courts consider "the knowledge and acts of the particular defendant to determine whether a failure to answer was not intentional or the result of conscious indifference," but due to mistake or accident. *In re Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021). Conscious indifference means more than mere negligence and has been defined to mean "the failure to take action that would seem obvious to a reasonable person under the same circumstances." *McLeod v. Gyr*, 439 S.W.3d 639, 655 (Tex. App.—Dallas 2014,

25

pet. denied). In determining this issue, we look at all of the evidence in the record. *Id.*

## B. Analysis

In his motion to set aside default judgment and for new trial, as on appeal, Diogu asserted that his failure to attend trial in this case was not due to conscious indifference, but rather, because his rule 18a motion to recuse Judge Brown was pending and the Texas Supreme Court had assigned it to Judge Trapp for consideration. Diogu asserts that he "believed that it was unnecessary for him to appear for trial since Judge Trapp has not ruled on the recusal motion." He also points to an email sent from Judge Gonzales's staff attorney to Judge Brown's executive assistant on January 26, 2024, copying the parties, which stated: "We received the attached Motions[13] yesterday. . . . Mr. Diogu has filed a Motion to Disqualify Judge Brown. In light of our fast approaching trial, Judge Gonzales wanted to ensure you knew about this so this can be expedited, if possible. Please let me know if you need anything from the Court." According to Diogu, after he received the email, "he believed that the trial would not [be held] since Judge Gonzales was requesting clearance from the 11th Administrative Judicial Region of Texas to expedite the recusal decision."

---

[13] The motions attached to the email were (1) Diogu's motion to disqualify Judge Brown; (2) the Commission's response to the motion; and (3) a proposed order.

In its response to Diogu's new trial motion, the Commission contested Diogu's assertion that he believed his motion to disqualify Judge Brown would prohibit Judge Gonzales from proceeding with the jury trial. In support its position, the Commission pointed to the following evidence:

- After considering Diogu's motion for trial continuance filed on November 3, 2023, Judge Gonzales issued an order granting trial continuance in part, notice of hearing date, and new trial order setting the trial for January 30, 2024, at 9:00 a.m., and setting the pretrial hearing for January 26, 2024;
- After Diogu's motion to recuse/disqualify Judge Gonzales had been denied, on January 25, 2024, Judge Gonzales's staff attorney emailed the parties that the pretrial hearing would go forward on January 26 ["Per Judge Gonzales' Order – we will see you tomorrow at 9:30am via ZOOM."];

- At the pretrial hearing on January 26, 2024, Judge Gonzales denied Diogu's emergency motion for continuance of the trial setting and specifically advised the parties several times that the trial would go forward on January 30;[14] and

---

[14]     At the hearing, the following exchange occurred:

[Diogu]: As I said, I'm not ready for the trial on Tuesday. I'm just letting the Judge know that.

[The Court]: Okay. Right. And I've ruled on that [Diogu's motion for continuance] and that has been denied.

. . . .

[The Court]: Diogu, did you present a motion in limine? I don't think I saw one.

[Diogu]: Not yet.

[The Court]: Okay. Well, obviously, we're picking a jury on Tuesday. The jury, I think, comes in at 10:00, as I recall.

. . . .

- On January 29, 2024, Diogu filed a motion for stay of the January 30, 2024 trial setting with this Court in connection with a petition for writ of mandamus, demonstrating he knew the trial was going forward; the petition was denied the same day.

A movant satisfies his burden as to the first *Craddock* element when his factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and those factual assertions are not controverted by the plaintiff. *See Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006). When controverted, as here, the question of whether a movant's failure to act was intentional or the result of conscious indifference is a fact question to be resolved by the trial court. *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993). The trial court "may generally believe all, none, or part of a witness's testimony [and] can reasonably believe, based on contradictory evidence, that there was intentional or consciously indifferent conduct on the part of the movant." *Lynch v. Lynch*, 540 S.W.3d 107, 122 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). In light of this contradictory evidence, the trial court could have disbelieved Diogu's explanation and concluded that he did not negate conscious indifference to appearing at trial. *See Milestone Operating*, 388 S.W.3d at 310.

---

[The Court]: All right. So here's the deal, Mr. Diogu. On Tuesday morning, we're starting to pick a jury in Fort Bend County.

The trial court could have also disbelieved Diogu's assertion that he thought the jury trial would not proceed based on the email from Judge Gonzales's staff attorney to Judge Brown's assistant regarding expedited consideration of Diogu's motion to disqualify Judge Brown. First, as previously discussed, Diogu's motion was seeking to disqualify Judge Brown, not Judge Gonzales, and therefore would not affect Judge Gonzales's ability to move forward. *See* TEX. R. CIV. P. 18a. Second, contrary to Diogu's assertion, there is nothing to suggest that Judge Gonzales was "requesting clearance from the 11th Administrative Judicial Region of Texas to expedite the recusal decision," as evidenced by the fact that Judge Gonzales proceeded to trial before the motion was decided. Third, after receipt of the January 25, 2024 email, Diogu was notified that the pretrial hearing would go forward. Further, at the pretrial hearing, Judge Gonzales denied Diogu's emergency motion for continuance of the trial setting and advised the parties that the trial would go forward on January 30, 2024. Finally, to the extent that Diogu asserts that he believed that his request that Judge Brown reconsider her denial of his motion to recuse Judge Gonzales meant the trial would not proceed, the trial court could reasonably have found that this factual assertion did not negate conscious indifference. Nothing in rule 18a or the case law interpreting it supports Diogu's contention that the trial court could not proceed with the trial while a motion for reconsideration was pending. Indeed, this Court previously rejected a similar

argument raised by Diogu in a case in which he was a party. *See Diogu*, 2015 WL 3982531, at *3.

On this record, the trial court reasonably could have found that Diogu's explanation did not negate conscious indifference to appearing at trial.[15] We hold that the trial court did not abuse its discretion in denying his motion for new trial. *See Dolgencorp.* 288 S.W.3d at 926.

We overrule Diogu's fifth issue.

All pending motions are dismissed as moot.

## Conclusion

We affirm the trial court's judgment.

Kristin M. Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[15]   Because resolution of *Craddock*'s first element is dispositive, we do not address the remaining two elements. *See* TEX. R. APP. P. 47.1; *see also Century Sports Wears, Inc. v. Wallis Bank*, No. 02-20-00201-CV, 2021 WL 1685957, at *2 (Tex. App.— Fort Worth Apr. 29, 2021, pet. denied) (mem. op.) ("[W]e will uphold the denial of the motion for new trial if the evidence in the appellate record supports the denial based on a failure to satisfy any of the three *Craddock* elements.").